## ABSALOM B. STONE v. DANIEL K. SMITH.

A party to a bill of exchange, who has been relieved from responsibility thereon through failure of the holder to present it in proper time, may waive the consequences of such neglect. As where the indorser, after full knowledge that he is discharged, promised to pay the bill, it will amount to a waiver.

Where S sold a draft, which was payable to himself or bearer, without indors-

ing it, if he promised to refund if the draft should be dishonored, he stands in no better condition than an indorser or guarantor, and if the draft was dishonored because of a failure to present it within a reasonable time, S might waive his discharge by a verbal promise to pay it. And where there was some evidence tending to prove the waiver, and the judge refused to charge this principle, the court ordered a new trial.

APPEAL from Harrison. The case was tried before Hon. CHARLES A. FRAZER, one of the district judges.

The defendant below, Smith, sold to the plaintiffs a draft in the following words:

"$750.                          JANUARY 24, 1857.

"At sight pay to the order of D. K. Smith or bearer $750, value received, and charge the same to account of

"WYLY & TOTTY.

"To Messrs. DONOVAN, McLEAN & Co.,

"*New Orleans.*"

Smith did not indorse the draft, but there was an allegation, not proved, that he represented it to be good, and promised to refund the $750 paid for it should it be dishonored. It was presented and protested on the 21st April, 1857, three months after its date, and nearly the same time after the transfer. The proof was, that it could have reached New Orleans within from three to six days. The plaintiffs demanded the money of the defendant, and there was evidence conducing to prove that he said he would "make it all right;" but he seemed at all times to deny his liability, saying there was too great delay in presenting the draft.

His amended answer admits that he received it back, however, and sued the drawers, and obtained judgment against them. But under what arrangement he got it back is differently averred by the parties, but not proved. Defendant plead that he received it, and sued it for the benefit of the plaintiffs. Donovan swore that had the draft been presented to his house at any time before the

middle of April it would have been paid. They had no funds in hand of the drawers when it was protested.

As the draft was negotiable by delivery, and Smith did not indorse it, and after the protest it became the debt of the drawers, if, indeed, they were not released by the long delay of the presenting, and Smith could not verbally become liable for their debt without a contract in writing, the issue would really seem to be, did Smith verbally promise at the time of sale to refund the money should the draft be dishonored? And, if so, was such a promise binding under the statute of frauds? Certainly there was no question about his liability as indorser, for he did not indorse. The parties and the court, however, seemed to treat it not as a case of original liability, and of the release of that liability by neglect to present the draft and look to the real debtors, (the drawers,) but as though Smith was indorser, and waived his discharge by promise to pay after protest, when it was too late to charge either indorser (had there been one) or drawers.

The court gave and refused the following instructions: "If they believed from the evidence that there was such delay in the presentation of the draft as caused the same not to be paid, and the amount thereof to be lost, when it would have been paid had it been presented in reasonable time, to find for the defendant," which is assigned as error.

The appellant's attorneys asked the court to instruct the jury as follows:

"If the defendant promised to pay the amount of the draft to the plaintiff after it was protested, and received the draft back with the knowledge of the fact that it was protested, and of the time that it was protested, he thereby waived the want of presentation within a reasonable time," which was refused, and is assigned as error.

There were a verdict and judgment for the defendant, from which the plaintiff appealed.

*N. H. Wilson*, for appellant, argued the case upon the law merchant, as though Smith had been indorser, and cited Story on Prom. Notes, §§ 360–362, 663; Story on Bills, § 373.

He concluded thus: " The evidence shows that the appellee promised to pay after the protest, with a full knowledge of all the *laches* of the appellant. He took the draft back soon after it was protested; for he brought suit upon it on the 6th of May, 1857, against Wyly & Totty, in Shreveport, and averred in his petition that it had been duly protested for non-payment. But this is not all: more than a month after the commencement of the suit against Wyly & Totty, the appellant sent his brother, the witness J. B. Stone, with a note to the appellee, and made a demand of the money that he owed him. The witness understood that the note related to the draft, and as there is no other indebtedness shown, we must presume that it was the draft debt that was spoken of, and that the witness was correct in his understanding. The appellee's reply to the demand was, that "he would be over in a few days, and it should all be right, and that they would settle."

*James Turner*, also for appellant.—The charge of the presiding judge in the court below was well calculated to, and did, mislead the jury in arriving at a proper verdict on the facts.

The original agreement between the parties, as set out in the petition, is not set up by the plaintiff as a cause of action, but is set out simply as a consideration to support the subsequent promise of the defendant to pay the draft after it had been presented and protested for non-payment. The second count of the original petition, setting up claim for money loaned, was not relied on by the plaintiff, and no proof introduced in support of it. The amended petition, filed March 23, 1860, sets forth the cause of action, eiterati ng the understanding of the parties at the time the

draft was received by the plaintiff, and charging, that on or about the 23d day of April, 1857, the draft was returned to the defendant, who then and there agreed and promised to pay the money. This is the cause of action. It was entirely ignored by the district judge in his charge to the jury.

The charge of the court was calculated to mislead the jury in another particular. They are charged, that unless they believed from the evidence that the plaintiff paid the sum mentioned in the petition, with the understanding that it was to be refunded in case the draft was not paid, then they were to find for the defendant. This is manifestly an error. It is a matter of no consequence what price the plaintiff paid for the draft, whether $100 or $1,000; it does not affect his right to recover, if his case is otherwise made out under the law. The whole case, according to the charge of the district judge, was made to depend upon the contract between the parties at the sale and the time that elapsed between the purchase and presentment of the draft, entirely ignoring the subsequent promise to pay, or the conduct of the defendant, from which such a promise was to be presumed or implied.

A promise to pay, even after a party has been discharged from his legal obligation by the *laches* or misconduct of the holder, is a waiver of his right to have the paper duly presented and protested, and will bind him; and it matters not whether the promise was made with or without a knowledge on his part of the *laches* of the holder. Everything necessary to render him completely liable is presumed. The promise admits the existence of everything necessary to fix his liability. (Story on Bills of Exc., § 373; Chitty on Bills, 533; Pate v. McClure, 4 Rand., 164; Walker v. Leverty *et al.*, 6 Munf. 487.)

*William Woodson* and *Murrah & Burke,* for appellee.—The law is clear that the plaintiff shall bear the consequence of

his own negligence.    The proof shows that the draft might
have reached New Orleans by the ordinary course of travel
or the ordinary course of mails within from three to six days.
(Chitty on Bills, 12th ed., marg. p. 379; Story on Prom.
Notes, §§ 208, 493.)   These authorities show that there must
be no unnecessary delay in presenting the draft for payment,
and if there be, and loss ensues, the loss falls upon the
holder.    (3 Kent, marg. p. 92; Chitty on Bills, § 356.)    A
bill payable at sight must be presented for payment within
a reasonable time, otherwise the drawer will be discharged.
(Story on Bills, 2d ed., § 325; Bayley on Bills, ch. 7, § 1,
pp. 217, 232, 234, 8th ed.; Story on Prom. Notes, § 207;
Edwards on Bills and Notes, p. 390, ed. 1857; Straker v.
Graham, 4 Mees. & Wells., 721.)

A bill payable in a different place from that in which it
is negotiated should be sent forward by mail on the next
succeeding day for presentment.   (McGonder v. Bank; U.
S. Bank v. Smith *et al.*, 1 Amer. Lead. Cases, 4th ed., 354;
Camp v. Clark, 14 Vt., 387, 391; Festner v. Perham & Gib-
son, *et al.*, 2 Smedes & Marsh., 151, 163; Robinson v. Gibson,
20 Johns., 146.)   The holders of bills and notes are com-
pelled by the law merchant to the most exact diligence, and
cannot escape from the duty of due diligence of the pre-
sentation of them.    (Tobey v. Barker, 2 Amer. Lead.
Cases, 4th ed., 257, 258.)

WILLIE, J.—It is assigned for error that the court below
refused to give the following charge asked by the appel-
lant: "If the defendant promised to pay the amount of
the draft to the plaintiff after it was protested, and received
the draft back with the knowledge of the fact that it was
protested, he thereby waived the want of presentation
within a reasonable time."   It is the well-settled doctrine
of the English courts, and the weight of American author-
ity is to the same effect, that a party to a bill of exchange,
who has been relieved from responsibility thereon through

failure of the holder to present it in proper time, may waive the consequences of such neglect. (Chitty on Bills, 499; 3 Kent Com., 113; Story on Bills, 373.)

As where the indorser, after full knowledge that he is discharged by such *laches*, promises to pay the bill, it will amount to a waiver of the presentment, and bind the promisor to its payment. (Story on Bills, 373.) The court below, in its general charge to the jury, placed the liability of the defendant on the same footing with that of an indorser. It held him discharged by a failure to present the bill within reasonable time, but did not bind him by any subsequent waiver or promise to pay the bill. It applied the law merchant to his case when beneficial to him, but held it inapplicable when imposing a liability.

The position of the defendant below was not identical with that of an indorser. His obligation arose from a verbal agreement, between himself and the holder of the draft, to pay the amount of the same in case it was dishonored by the drawee. It was not an obligation that could be transferred by the promisor to any future holder of the bill. If we apply the rules of mercantile law to his case, it must be through the analogy which his position bears to that of a guarantor. He certainly is entitled to no more rights, as between himself and the party with whom he contracted, than an indorser or guarantor can claim under similar circumstances. If he was discharged from his original agreement to pay the draft, in case it was dishonored through the *laches* of the holder in not presenting it within a reasonable time, he could waive his discharge and renew his obligation by a subsequent promise. The charge asked by plaintiff was therefore correct, as an abstract principle of law. It was not included within the general instructions of the court, and should therefore have been given, if applicable to the facts of the case. Without undertaking to determine whether or not there was sufficient proof to show a subsequent promise on the part of

the defendant to pay the bill, it is sufficient to say, that there was some evidence produced upon this subject. The plaintiff was entitled to have this evidence considered by the jury, under a proper charge, and as we are not prepared to say that the conclusion at which they arrived was entirely uninfluenced by the failure of the court to give the charge asked by plaintiff, their verdict must be set aside.

The judgment of the court below is reversed, and the cause

REMANDED.