Sebree Deposit Bank v. Moreland, &c.

CASE 27—PETITION ORDINARY—NOVEMBER 17.

# Sebree Deposit Bank v. Moreland, &c.

### APPEAL FROM DAVEISS CIRCUIT COURT.

1. NOTICE OF PROTEST.—The acceptor of a bill who has permitted the paper to go to protest may, as agent of the holder, give notice of protest to drawers and indorsers.

2. WHERE NOTICE OF PROTEST IS DELIVERED BY A SPECIAL MESSENGER other than through the regular mail, it must distinctly appear when it was delivered so as to enable the court to say that it was delivered as soon as it could have reached the party sought to be charged by due course of mail. Therefore, where drawers and indorsers are sought to be made liable upon notice delivered to them by the acceptor, it is not sufficient to allege that notice for them was on a certain day (which was in time) mailed to the acceptor, and "at once" delivered by him to them, as it can not be inferred for the purpose of holding liable any other person than the one to whom notice was addressed, that it was received in due course of mail.

3. FAILURE TO GIVE NOTICE OF PROTEST—NEW PROMISE.—When mere accommodation drawers and indorsers have been released by the failure to give due notice of protest, their liability is not revived by verbal promises to pay subsequently made. When the question of want of notice is in issue, it is competent to prove a subsequent promise to pay as a circumstance showing that the party had received notice, but it can have no greater effect.

4. SAME.—Where in such a case a promise to pay has been made upon the consideration that no suit would be instituted against the parties to the bill the promise is binding, and upon this promise an independent action can be maintained. But the mere allegation that the promise to pay having been made, the plaintiff forebore to sue, is not sufficient to create a liability.

5. SAME—PLEADING.—Conceding the doctrine to be that the general averment of due demand, protest and notice is sufficient, yet when the pleader attempts to set forth the mode in which notice was given and the facts stated are not sufficient to charge the indorser, the pleading should be held bad on demurrer.

6. SAME.—Even if the averments of the answer made upon information and belief as to facts which, if they existed, must have been within the personal knowledge of the defendants, were not sufficient, yet as there was no demurrer to the answer and the reply of plaintiff placed directly in issue the want of notice, the defect was cured and the demurrer to the reply can not be carried back to the answer.

Sebree Deposit Bank v. Moreland, &c.

REUBEN A. MILLER AND YEAMAN & LOCKETT FOR APPEL-
LANT.

1. Verbal notice of the dishonor of a bill is sufficient to bind the parties.
   (Daniel on Negotiable Instruments, vol. 2, sec. 972; Story on Bills
   of Exchange, sec. 300.)
      It is not necessary that the holder should give notice, but the par-
   ties may give notice to those behind.  (Daniel on Negotiable Instru-
   ments, vol. 2, secs. 987–90; Story on Bills of Exchange, sec. 294.)
2. Appellees knowing before the maturity of the bill that the acceptor
   would not pay, the want of proper notice could not affect them.
   (Daniel on Negotiable Instruments, vol. 2, secs. 1147–8; Story on
   Bills of Exchange, sec. 373; Yeager v. Farwell, 13 Wallace, 12; 1
   Parsons on Bills and Notes, 595 and note M.)
3. A promise to pay, with full knowledge of the facts of the manner of
   protest and notice, constitutes a waiver of the notice.  (Lawrence v.
   Ralston, 3 Bibb, 102; Higginson v. Morrison's Ex'or, 4 Dana, 103.)
      Additional authorities on petition for rehearing:  (Daniel on Ne-
   gotiable Instruments, vol. 2, secs. 1044, 990; Story on Bills of Ex-
   change, sec. 308.)

C. S. WALKER FOR APPELLEE.

1. There being no averment that the acceptor was made the agent of the
   bank, notice to the drawer and indorser by him is equivalent to no
   notice at all, and the appellees are, therefore, not bound.  (Newman's
   Pleading and Practice, 247, 248; Acts 1889, 1890, vol. 2, sec. 4, p.
   1248; Todd v. Edwards & Co., 7 Bush, 93, 94; Gen. Stat., c. 79, sec.
   5; Mulholland & Bros. v. Samuels, 8 Bush, 65; Neal & Co. v. Tay-
   lor, 9 Bush, 380.)
2. The mere averment that "the appellants, relying on the repeated
   promises of the appellees to pay the bill, forbore to sue," does not
   create a liability on the appellees.  The latter being already released,
   and no agreement to forbear being alleged, in the absence of a new
   consideration a new promise is not binding.  (Scott v. Strauss,
   Pritz & Co., 14 Ky. Law Rep., 892; Emmons v. Overton, 18 B. M.,
   650; Graves v. McGuire, Helm & Co, 79 Ky., 535; Ogden v. Reed,
   13 Bush, 582; Thornberry's Adm'r v. Dils, 80 Ky., 241; Gilmore v.
   Green, 14 Bush, 774; Civil Code, sec. 101; 2 Daniel on Negotiable
   Instruments, 3 ed., secs 970 and 1055.)
3. A new promise is only presumptive evidence of notice, and a recovery
   can not be had thereon unless it was made upon some new considera-
   tion.  (Higgins v. Morrison, 4 Dana, 100; Warren v. Fant's Trustee,
   79 Ky., 3; Lawrence v. Ralston, 3 Bibb, 102; Bank of Tennessee v.
   Smith, 9 B. M., 609; Landrum v. Trowbridge, Dwight & Co., 2
   Metcalfe, 281.)
4. The alleged promise to pay having been made by parol after the ap-

pellees were discharged, and without a new consideration, it is within the statute of frauds (Peabody v. Harvey, 4 Conn., 119; 10 Am. Dec., 103.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This case went off on the pleadings, the court below sustaining a demurrer to the reply of the plaintiff, and the latter failing to amend or plead further, a judgment was rendered for the defendants.

The action is based on a negotiable note for four thousand dollars, drawn by the appellee J. P. Moreland on S. P. Walden, in favor of J. H. Hickman (another appellee), and made payable at the Sebree Deposit Bank. The paper was indorsed by Hickman and discounted by the bank, and the proceeds placed to the credit of the acceptor, Walden, the paper having been made, as is alleged, for his benefit. The note was protested for non-payment, and the defense made by Moreland, the drawer, and Hickman, the indorser, is the failure of the bank (the holder) to give them notice of the paper's dishonor, and other defenses not necessary to be considered.

It is insisted by counsel for the bank that the averments of the answer made on information and belief, of facts that must, if they exist, be within the personal knowledge of the defendants, is bad pleading, and the demurrer to the reply should have been carried back to the answer and sustained to that pleading. There was no demurrer to the answer, and the reply of the plaintiff placed directly in issue the fact of the want of notice to the defendants of the dishonor of the paper, and cured the defect, if any existed.

It is alleged in the reply that the notary, in behalf of the holder (the bank), "mailed notices of the non-payment and protest of the bill to each of the defendants on the twelfth of July, 1892—to the acceptor, drawer and indorser of the bill, in an envelope addressed to S. P. Walden, at Owensboro, Kentucky, which was his post-office,. and believes and charges that the said Walden *at once* duly notified said drawer and indorser, Moreland and Hickman, of the dishonor of the bill, and that the defendants knew before the maturity of the paper it would not be paid, and knew that it had not been paid, and with full knowledge of these facts, did repeatedly promise to pay the bill, and relying on these promises forbore to sue for several months."

It appears from this pleading the party not entitled to the notice of dishonor, and without a request even to do so, had been intrusted with the duty of giving this notice to the drawer and indorser, so as to con·tinue their liability, and with that view it is alleged in the reply that when notices of the protest were received by the acceptor, *he at once* delivered them to the drawer and indorser. When the notice of protest was received by Walden is not alleged, and while it must be inferred as a matter of law that he received the notices in due time, as the notice was placed in the post-office as soon as it could be done, if it had been necessary to hold him bound, no such inference will be indulged as to the drawer and indorser of the paper. As they were each entitled to notice, and the time it was received by the acceptor as well as the time it was handed them by him, should

have been distinctly alleged, and the averments that it was received in due time by the acceptor and at once delivered to the drawer and indorser by him, are mere conclusions of the pleader, and will not authorize the court to say that such diligence had been exercised by the holder of the paper so as to continue the liability of the drawer and indorser.

It was a matter of doubt for a long time whether the acceptor of a bill, who had permitted his paper to go to protest, could give a valid notice, but Mr. Daniel, in his treatise on Negotiable Instruments, says it is now "a principle of the law merchant, however unphilosophical it may seem." (2 Daniel, sec. 990.)

When a notice is delivered by a special messenger other than through the regular mail, it must distinctly appear when it was delivered, so as to enable the court to say that it was delivered as soon as it could have reached the party sought to be charged, by due course of mail. In this case the bank made the acceptor its agent to deliver the notice of protest, and inclosed the notices to the acceptor by mail. They were not sent directly to either the indorser or drawer, and it is, therefore, manifest the averments of the reply should present a state of fact showing that the appellees received this notice as soon as it could have reached them by the regular mail. That they were sent by due course of mail to the payor, and when received delivered at once to the drawer and indorser, are not such facts as would authorize the inference that due diligence had been exercised by the holder, or that the drawer and indorser received the notices as soon as they would have

received them if the notices had been deposited in the regular mail in due time, addressed to each of the appellees.

The envelope in which the notices were inclosed, addressed to the acceptor, might have remained in the post-office for days before its reception by him ; and while the personal service or delivery of the notice by the acceptor to the appellees would have been good if delivered in due time, it must appear when the post-office may be used as a means of giving the notice, that a deposit of the notice in the office within due time was made, addressed to the party affected by the dishonor of the paper, or that notice was given by the holder or his agent to the party sought to be made liable, by a delivery made as soon as it could have been received by due course of mail.

There is no pretense that any notice was inclosed to the address of these parties and sent by mail, and no state of fact alleged showing that diligence on the part of the holder, so as to hold these appellees liable on the paper, unless it arises from the promise to pay alleged to have been made after they had known of the protest, and the failure of the acceptor to pay, and his inability, long before the note matured, to make payment.

It is insisted by counsel for the bank that the promises to pay by the drawer and indorser amounted to such an acknowledgment of continued liability by the drawer and indorser as absolutely fixed their liability. That the promises were made with a full knowledge of all the facts, and the purpose of the notice to the parties to the bill being to prevent any loss by

those who are not primarily liable or liable upon certain conditions and intended for their protection, they may affirm their liability by a recognition of their obligation to pay, and dispense with the conditions upon which the indorsement was made, the obligation of the indorsers being voidable only; and therefore the demurrer to the reply should have been overruled.

This view of the question is sustained by the decided preponderance of authority, both in the text-books and the reported cases. Mr. Daniel says that "the condition upon which the indorser becomes liable is not a strict and absolute condition precedent as conditions in contracts construed by the common law. The obligation of the indorser is regarded rather as voidable by non-fulfillment of these conditions than as actually avoided. If he chooses to affirm rather than disaffirm his liability, it can injure no one to leave him to the exercise of his discretion." (Sec. 1147.)

Again: "It makes no difference, where the promise to pay is made with knowledge of the laches, that the party making it did not know of its legal effect as a waiver, or that he had a legal defense to the bill or note, for it is a maxim that ignorance of the law excuses no one," &c. (Section 1148.)

In Yeager v. Farwell, 13 Wall., 6, the Supreme Court of the United States, following the doctrine of the textbooks, held the indorsers liable upon their promise to pay where neither protest or demand of payment had been made.

Yeager & Co., of St. Louis, had indorsed the paper of Kerchoff for fifteen thousand dollars, and the paper was held by Farwell & Co., of Boston, who

had advanced the money, and were the payees. On the 18th of October, 1867, *the last day* of grace, Yeager & Co. wrote a letter to Farwell & Co. to the effect that Kerchoff would be unable to meet the paper at its maturity, but they (Yeager & Co.) would hold themselves *"responsible for the payment of the note, and will see that it is done at an early day."* This letter was not received in Boston by the payees until after the time for protest had passed; and, Yeager & Co. refusing to pay, were sued as indorsers by Farwell & Co., and the court, through Mr. Justice Davis, held that Yeager & Co. were estopped from alleging a want of demand and notice of non-payment. That case could be distinguished from the one before us in many of its features, but the court, in its opinion, referred to the case of Sigerson v. Matthews, reported in 20 Howard, 496, in which it is said: "If the indorser, with full knowledge of the fact that no demand has been made or notice given, makes a subsequent promise, he is liable, and can not, when sued, set up as a defense the want of such demand and notice; and to the same effect are the decisions of the courts in this country generally. Applying the principles of these decisions to the admitted facts of this case, there is no difficulty in charging the indorsers."

While this court recognizes the importance of uniformity in judicial utterances affecting the liability of parties to commercial paper, we are not disposed to follow those authorities on the question before us. The tendency of legislation in this State, as well as the decisions of this court, is to relieve parties who

stand in the light of mere sureties on written obligations and are released from continued liability based upon verbal promises subsequently made.

There is no doctrine more firmly established than that negotiable paper, when dishonored, requires demand, protest and notice to those who are the mere accommodation indorsers or drawers, in order to hold them responsible. This is the rule of the law merchant, and applicable to notes discounted in bank and placed on the footing of foreign bills by our statute; and to recognize a doctrine that in effect dispenses with the performance of conditions by the holder upon which the indorser agrees to become bound, and hold him liable upon a subsequent promise to pay, although released, destroys the virtue of commercial paper, and places the indorser at the mercy of those who, in great commercial transactions, are seeking to hold those liable who have been once released, upon the plea that the laches of the holder redounds at last to his benefit, if he can establish a promise on the part of the indorser, although released from the payment of the dishonored paper.

There is no rule of commercial law more rigidly applied than that requiring notice of protest to those who are the mere indorsers of negotiable paper, and there is but little reason, it seems to us, for dispensing with this rule, or nullifying the conditions upon which the indorser becomes and is to remain bound, for the purpose of releasing the holder from the effect of his own laches.

Where the question of a want of notice is in issue, it would be competent to show a subsequent promise

to pay, as a circumstance showing that the party had received notice, but to make such a promise conclusive, or a waiver of the right to a notice, is a doctrine in which we cannot concur.

In this case the reply alleges the manner in which the notice was given; and, conceding the doctrine to be that the general averment of due demand, protest and notice is sufficient, yet where the pleader attempts to set forth the mode in which notice was given, and the facts stated are not sufficient to charge the indorser, the pleading should be held bad on demurrer; and the averment of a subsequent promise to pay being a mere matter of evidence, will not be considered.

If the promise had been made upon the consideration that no suit would be instituted against the parties to the bill, the promise would be binding, and upon this promise an independent action could be maintained. No such fact is alleged, even in the reply, or any facts connected with the promise that would work an estoppel. It is alleged only that the promise having been made, the plaintiff forbore to sue. No loss or injury is alleged by reason of the promise. There is no allegation that the promise was made in consideration that no suit would be brought on the paper. The payor, Walden, was insolvent, and the appellants have a judgment against him for the debt. A promise to pay, after the maturity of the paper, is presumptive evidence that demand was made and notice duly given, and would support a recovery if there was no evidence to the contrary, or rather the question would go to the jury upon the issue made; but in this case the notice was not duly given, as appears from the reply of the plaintiff.

This court in the case of Lawrence v. Ralston, reported in 3 Bibb, 102, decided the question involved here. In that case it appeared that Aaron Burr, while on a visit to the present capital of the State, on the 19th of December, in the year 1806, drew a bill of exchange on George M. Ogden, a merchant of New York, requesting him, at one hundred and twenty days, to pay Charles Lynch or order, seven hundred dollars. That paper was indorsed by Ralston to Sebastian, and by Sebastian to Lawrence, the plaintiff in the action. Ralston, after the bill was drawn and before maturity, descended the Ohio and Mississippi rivers, and before his return the bill was protested. After Ralston's return he was sought to be made liable as indorser of the paper, and defended on the ground that notice had not been given him of the protest or non-payment. There being no sufficient evidence of notice, it was then attempted to fasten liability upon him on the ground of his promise to pay. This court, in reference to that issue, said: "We think a promise made under such circumstances, not being founded on any valid consideration, induces no legal obligation, and can not, therefore, form a sufficient cause of action. It is not denied but that a promise to pay a bill by an indorser, unless accompanied by circumstances repelling the presumption, is an implied admission of due notice having been given." (3 Bibb, 104.)

This is the extent to which the authorities in this State go, and we think the correct rule on the subject. In the cases of the Bank of Tennessee v. Smith, 9 B. M., 609, and Landrum v. Trowbridge, Dwight & Co., 2 Met., 281, a distinction is attempted to be drawn be-

tween a promise made after protest for non-acceptance and a protest made for non-payment after maturity. In the case of Landrum v. Trowbridge, Dwight & Co. there was a protest for non-payment, as well as non-acceptance, and while the distinction between the character of the two cases may exist, in so far as it affects the liability of the indorser, we think, and so adjudge, that the subsequent promise to pay is not binding on the indorsers unless supplied by a consideration, but that on the issue as to whether notice of protest had been given, it is competent to go to the jury to establish that fact, and to this extent only we are disposed to go; but as the pleadings in this case show that due notice was not given, the promise, if proven, would not avail the appellant.

The obligation of the indorser is known to the holder of the bill. His relation to the bill requires the highest degree of diligence on the part of the holder for the protection of the indorser; and when released from liability, having occupied the position of a mere surety, something more than a verbal promise, so easily established when large commercial interests are involved, should be established before that which is dead is brought to life, and the liability continued without any consideration whatever.

The judgment below must be affirmed.