CASE 54.—ACTION BY THE MECHANICS' & FARMERS' SAV-
INGS BANK AGAINST F. W. KATTERJOHN.—March
9, 1910.

# Mechanics' & Farmers' Savings Bank v. Katterjohn

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1. Bills and Notes—What Constitutes "Negotiable Instrument."
   —A note, properly signed by the maker, containing an uncon-
   ditional promise to pay a sum certain in money at a speci-
   fied future time, to the order of a specified person is a
   "negotiable instrument."
2. Bills and Notes—Rights and Liabilities on Indorsement or
   Transfer—Statutory Provisions.—Where the negotiable in-
   strument act (Laws 1904, c. 102) speaks with reference to the
   rights and liabilities of indorsers, it controls; but, where it
   is silent, resort must be had to the law merchant or the com-
   mon law regulating commercial paper.
3. Bills and Notes—Indorsement—Accommodation of Maker—
   "Indorser."—Negotiable Instrument Act (Laws 1904, c. 102)
   Sec. 63, provides that: "A person placing his signature on an
   instrument otherwise than as maker, drawer or acceptor, is
   deemed to be an 'indorser,' unless he clearly indicates by ap-
   propriate words his intention to be bound in some other
   capacity." Held, that one who became the payee of a note,
   and indorsed the same, to enable the maker to negotiate and
   discount it for his own benefit, is liable merely as an accom-
   modation indorser.
4. Bills and Notes—Notice of Nonpayment—To Accommodation
   Indorser.—Such indorser is discharged in the absence of
   notice of nonpayment, as required by Negotiable Instrument
   Act, Sec. 89.

5.   Bills and Notes—Notice of Nonpayment—Waiver.—Negotiable
     Instrument Act (Laws 1904, c. 102) Sec. 109, provides that
     "notice of dishonor may be waived, either before the time of
     giving notice has arrived, or after the omission to give due
     notice, and the waiver may be express or implied." Held,
     that the mere oral promise after maturity of a note, by an
     accommodation indorser to renew the note does not con-
     stitute a waiver of failure to give him notice of dishonor;
     such promise not amounting to an acknowledgment of lia-
     bility.

BRADSHAW & BRADSHAW for appellant.

T. L. CRICE for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Affirming.

This action was instituted in the McCracken cir-
cuit court on the 25th day of July, 1908, by the appel-
lant, Mechanics' & Farmers' Savings Bank, the plain-
tiff below, on a certain promissory note executed by
John G. Rinkliffe to the order of appellee, F. W.
Katterjohn, bearing date of August 19, 1907, due 60
days after date, for the sum of $800, and which was
indorsed by F. W. Katterjohn, and also by Thomp-
son-Wilson & Co., a corporation. The defendant,
Rinkliffe, made no defense, and judgment was ren-
dered against him by default. Appellee, Katterjohn,
defended on the ground that he was simply an ac-
commodation indorser for Rinkliffe, and that he was
discharged from liability by reason of the fact that
the note was not presented for payment, and he re-
ceived no notice of dishonor. Appellant, by amended
petition, pleaded a waiver by Katterjohn of present-
ment and notice. The evidence was heard on the
11th day of February, 1908, and submitted to the
court without a jury. The court, being unable to ar-
rive at a satisfactory conclusion, continued the case

until the next term, whereupon the preceding order of submission was set aside, and a jury ordered, and the case set for trial on the 13th day of the May term. On that day the evidence previously taken was considered read, and the court instructed the jury peremptorily to find for appellee Katterjohn. The bank's motion and grounds for a new trial were overruled, and it appeals.

It is the contention of appellant (1) that where a payee in a negotiable promissory note becomes an accommodation indorser for the maker, he is a mere surety, and primarily liable on the instrument, and therefore not entitled to notice; and (2) that there was sufficient evidence on the question of waiver of presentment and notice to justify the submission of the case to the jury.

At the outset, we may say that the note in question fulfills all requirements of a negotiable instrument: First, it is in writing and signed by the maker; second, it contains an unconditional promise or order to pay a sum certain in money; third, it is payable at a fixed or determinable future time; fourth, it is payable to the order of a specified person. The note under consideration not only contains the above requirements of a negotiable instrument, but it was actually negotiated by appellant. After it was indorsed by appellee, Katterjohn, Rinkliffe took the note to the bank, discounted it, and obtained the proceeds. That being the case, no question has been raised, nor could any be raised, as to the negotiable character of the instrument.

The evidence is as follows: J. T. Laurie, cashier of the appellant bank, testified that the note was discounted in the regular course of business by Rinkliffe, who received the proceeds. In reply to the ques-

tion whether or not he had given notice to Katterjohn and the other parties on the note of its maturity he answered: We mail notices to all parties anywhere from 8 to 10 days before the paper is due. Q. Did you mail notice to this party on this particular paper? A. I am sure I did. Yes, sir; sent notice." Upon cross-examination upon this point it is made to appear that his confidence in the fact of the notice being sent was due to the regular custom of the bank to mail notices; he did not have any recollection of the particular notice being sent. This witness further testified that, about a week or two after the maturity of the note, he met appellee, Katterjohn, at the post office in Paducah, and said to him, "Will you give me a renewal of that note down there?" Katterjohn answered, "Yes, sir." He also testified that the note in question was in possession of the bank on the date of its maturity. Katterjohn testified that he indorsed the note in controversy for the accommodation of Rinkliffe, and that he received none of the proceeds. He also denied receiving notice of the maturity of the note, and further denied the conversation in the post office with reference to renewing the note. It also appears from his testimony that he was on a number of notes in different banks in Paducah, but did not know how many, or what they were until his attention was called to them.

Passing the question whether or not appellee was entitled to presentment and whether or not presentment was duly made, we shall consider only two questions: (1) Was appellee, as accommodation indorser, entitled to notice of dishonor? (2) If so, did he waive that requirement?

It is insisted by appellant that, under the rule laid down by this court in the case of Hunt v. Arm-

strong's Adm'r, 5·B. Mon. 399, appellee, Katterjohn, was in effect a surety, and therefore primarily liable, and not entitled to notice. In that case, however, no question of notice was before the court. In the more recent case of Sebree Deposit Bank v. Moreland, etc., 96 Ky. 150, 28 S. W. 153, 16 Ky. Law Rep. 404, 29 L. R. A. 305, this court announced that there was no doctrine more firmly established than that negotiable paper, when dishonored, requires demand, protest, and notice to those who are mere accommodation indorsers or drawers, in order to hold them responsible. However the rule may have been prior to the new negotiable instrument act (Laws 1904, c. 102), we now regard the question as finally determined by its provisions. That act is now in force in a majority of the states of this country. It resulted from the concerted efforts on the part of bar associations, commercial clubs, bankers' associations, and the citizens generally, to secure uniformity in the law relating to negotiable instruments. Prior to the adoption of this act by the various states in which it is in force, there was a great lack of uniformity in the statutes of those states and in the decisions of the courts with reference to the law merchant. A merchant engaged in business in one state, and doing business with citizens of other states, would frequently find that a note which was negotiable under the law of his domicil was, in fact, nonnegotiable at the place where it was executed or was to be paid. This led to great confusion in the conduct of commercial affairs. To obviate this difficulty the negotiable instruments act was passed by the Legislatures of several states. The provisions of these various acts are substantially the same, and we take it that they should be construed so as to maintain, as far as possible, the

idea of uniformity. Our conclusion, then, is that, where the negotiable instruments act speaks, it controls; where it is silent, resort must be had to the law merchant or the common law regulating commercial paper.

With this view of the act in mind, let us examine certain of its provisions. Section 63 is as follows: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Section 89 is as follows: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." Appellee, Katterjohn, did not place his name on the instrument in question otherwise than as maker, drawer, or acceptor; nor did he clearly indicate by appropriate words his intention to be bound in some other capacity. Therefore, by the express provisions of section 63, he became bound as indorser to the holder of the note. As said before, Rinkliffe, the maker of the note, discounted it and received the proceeds. Appellee, Katterjohn, had nothing to do with the negotiation of the note. No portion of the proceeds was paid by the bank to him. It was not executed for his accommodation. Under such circumstances, he was not primarily liable on the note, but was liable merely as an accommodation indorser. No facts are shown that would bring this case within any of the exceptions to section 89, requiring notice of dishonor to be given to the indorser as set forth in the provisions of the negotiable intruments act.

In the recent case of Deahy v. Choquet et al., 28 R. I. 340, 341, 67 Atl. 422, 423 (14 L. R. A. [N. S.] 847), which arose under the negotiable instruments act of Rhode Island, which is substantially the same as the act now in force in this state, the Supreme Court of that state said: ''The defendants' names come within the plain language of these sections, and there is no evidence that they made any agreement to vary their liability. They all affixed their names to the note before delivery for the accommodation of Choquet, to whom the plaintiff directly paid the money for it, knowing that they were such accommodation indorsers. As such they were entitled to notice of dishonor of the note by sections 97, 111, art. 8, c. 674 [Laws 1899], which they never received. It is urged, however, by the plaintiff that all these defendants became liable to him as joint makers because he would not have taken the note if their names had not been upon it, and, in regard to defendant Carroll, that there was an express waiver by him of presentment and notice. The claim that the indorsers are liable as makers because that plaintiff required good indorsers before he would discount the note is the height of absurdity. If it were valid, every indorser whose name was of any value would be held as a maker.'' In another connection the same court said: ''In the case at bar the note was issued when the plaintiff paid the maker a consideration for it, and there is no evidence of any consideration being paid to the indorsers, or of any agreement with them, other than that expressed by their signatures upon the note. By indorsing the note they assumed the obligation of successive indorsers, to become effectual when it came into the hands of a holder for value. This obligation was released by failure to make presentment

and to give notice of dishonor, and the plaintiff has no claim upon them.''

Our conclusion, then, is that appellee, Katterjohn, was released from all liability by reason of appellant's failure to give him notice of dishonor, unless his alleged promise to renew the note was sufficient to constitute a waiver of such notice. Prior to the adoption of the new negotiable instruments act the rule in Kentucky was that, when mere accommodation drawers or indorsers had been released by failure to give notice, their liability was not revived by verbal promises to pay, subsequently made, unless such promises were based upon a new consideration. This rule, however, was contrary to the general doctrine upon the subject. A majority of the courts held that if an indorser, with full notice of the fact that no demand had been made or notice given, made a subsequent promise to pay, he was liable, and could not when sued, set up as a defense the want of such demand and notice. Sigerson v. Mathews, 20 How. 496, 15 L. Ed. 989; Daniel's Negotiable Instruments, §§ 1147-1168. Section 109 of the negotiable instruments act provides: ''Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied.'' We think it apparent that the purpose of the foregoing provision was to put in force in this state the rule that had theretofore been adopted by a majority of the states. Under this section notice of dishonor may be waived, either before or after the notice is due; and such waiver may be express or implied. Did the mere promise of appellee, after he was discharged by reason of want of notice constitute a waiver of notice? As to what will constitute a waiver, the doctrine is

well stated in the case of Glidden v. Chamberlin, 167
Mass. 486, 46 N. E. 103, 57 Am. St. Rep. 479, where
it is said: "In this commonwealth, where one is under
no existing liability upon a contract either because
the contract was made during infancy, or by reason
of the statute of limitations, or of a discharge in in-
solvency, or because his name has been forged or
signed without authority, or for want of demand or
notice of dishonor to an indorser of a bill or note,
and it is sought to establish a liability by proof of
ratification, new promise, adoption, or admission of
liability, the rule has been held with some strictness
that the proof must be clear and distinct. See, as to
cases of infancy, Proctor v. Sears, 4 Allen, 95; Tobey
v. Wood, 123 Mass, 88 [25 Am. Rep. 27]; as to cases
under the statute of limitations, Weston v. Hodgkins,
136 Mass. 326; Krebs v. Olmstead, 137 Mass, 504;
Custy v. Donlan, 159 Mass. 245 [34 N. E. 360, 38 Am.
St. Rep. 419]; Boynton v. Moulton, 159 Mass, 248 [34
N. E. 361]; as to cases of discharge in insolvency,
Bigelow v. Norris, 139 Mass. 12 [29 N. E. 61];
Kenney v. Brown, 139 Mass. 345 [1 N. E. 547]; as to
cases of forgery or unauthorized signature, Greenfield
Bank v. Crafts, 2 Allen, 269, and 4 Allen, 447; Trad-
ers' National Bank v. Rogers, ante [167 Mass.] 315
[45 N. E. 923, 36 L. R. A. 539, 57 Am. St. Rep. 458];
and as to cases of indorsers, Creamer v. Perry, 17
Pick 332 [28 Am. Dec. 297]; Parks v. Smith 155
Mass. 26 [28 N. E. 1044]. An unqualified admission
of liability, or a direct promise to pay, which imports
such admission, is evidence of the most satisfactory
kind.   Evidence of circumstances or of conversa-
tions which are equivocal in their character and which
do not import a clear admission  of  liability,  or
amount to a distinct promise to pay, and which are

consistent with the view that the indorser was merely seeking to avoid or postpone a suit against himself, are not satisfactory evidence either to prove actual notice or to re-establish the indorser's liability after it has ceased for want of demand or notice.''

In the case before us, appellee did not make a promise to pay; he did not acknowledge his liability on the note. His promise to renew was not an admission of liability, for he may have been willing to renew, and not to pay. We are therefore of opinion that the promise to renew was not sufficient to establish appellee's liability after it had ceased for want of notice. That being the case, the evidence of waiver of notice was not sufficient to justify the submission of the case to the jury.

Judgment affirmed.