**MARY COUTS BURNETT TRUST et al. v. SAMUELS.**

No. 12769.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 18, 1933.

Rehearing Denied April 1, 1933.

Slay & Simon, of Fort Worth, for appellants.

Samuels, Foster, Brown & McGee, of Fort Worth, for appellee.

CONNER, Chief Justice.

This suit was instituted in the county court by the appellant trust against A. W. Samuels to recover the sum of $498.30 as the balance remaining unpaid on an original indebtedness of $664.40.

The trial resulted in a judgment in favor of appellee Samuels, and the trust has appealed.

The facts, which were duly presented in the respective pleadings of the parties and proved on the trial, are substantially as follows: On the 22d day of January, 1930, Samuels was indebted to the appellant trust in the sum of $664.40, for which he executed his check, payable to the trust in said sum; the check being drawn on the Texas National Bank of Fort Worth, Tex., which bank failed and closed its doors on January 31, 1930. The check was not presented for payment to the bank, which was located in Fort Worth within seven blocks of the office of the trust, on the following day or on any succeeding day thereafter until the 31st day of January, 1930. On February 1, 1930, the check went through the clearing house of the Fort Worth banks and was presented for payment to the Texas National Bank and then refused. It was further pleaded and shown that the failure of the Texas National Bank occurred on the 31st day of January, 1930, and on each and every day from the 22d day of January, 1930, up to and until the bank closed its doors, Samuels had to his credit in the bank more than enough to pay the check had it been presented by the payee. After the check had been presented to the Texas National Bank and after Samuels knew that said check had been so presented for payment and refused, he made a verbal promise to the secretary of the trust and to the attorney of the trust that he would make the check good and pay the amount of same.

It further appears that the bank, since the date of its failure and since the time of the subsequent promise to pay on the part of Samuels, made two payments to its depositors in the amounts of 25 per cent. and ten per cent., respectively, which aggregated the sum of $232.54. These two dividend payments were paid to the trust by Samuels, thus leaving an unpaid balance of $431.86 due upon Samuels' original obligation which has never been paid.

The trial court concluded that the trust was negligent in failing to present the check to the bank on the day following its execution or within a reasonable time thereafter, and that as a result of the failure of the bank and of the negligence of the trust in presenting the original check for payment in due time, Samuels had lost the amount of the unpaid balance hereinbefore set forth.

The court further concluded that Samuels' subsequent promise to pay the amount of the check was without a supporting consideration and did not constitute a waiver of the negligence found nor in any way waive or dispense with the necessity of the due presentation of the check for payment, and judgment for appellee was accordingly rendered as stated in the beginning.

Section 186 of article 5947 of the Negotiable Instruments Act provides: "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

Section 193 of article 5948 provides that: "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

Under these provisions it seems clear that the court properly held the appellant trust was not entitled to recover on the check as such, for the court found that the delay of five days in the presentment of the check was an unreasonable delay constituting negligence, and this finding we think must be supported. The operating offices of the trust and the bank were in the same city and within a short distance of each other, and the delay of five days in the absence of any circumstances excusing the delay seems certainly sufficient to uphold the finding of an unreasonable delay. Indeed, the trust through its counsel admits negligence in this respect, so that we have only to determine whether the

court was in error in denying a recovery upon Samuels' subsequent promise to pay the unpaid balance of the debt as evidenced by the check.

In a determination of this question it is to be noted that it was agreed that there was an original debt of $664.40 existing at the time the check was drawn. The execution and delivery of the check did not operate as an extinguishment of the original debt. The check merely authorized the bank to pay the drawee the amount shown on its face out of the moneys in the bank to the credit of Samuels. The difference, therefore, between the amount for which the check was drawn and the payments by Samuels of 25 per cent. and 10 per cent. dividends in his favor by the receiver of the bank's assets constitutes that portion of the original indebtedness which has never been paid. This balance without dispute Samuels promised to pay after the admitted negligence of the trust in failing to present the check for payment within a reasonable time. He in fact did pay the amounts of the several dividends paid by the bank to him as one of its creditors.

It is insisted in behalf of appellee that such promise under the circumstances was without consideration and does not amount to a waiver on his part of the bank's failure to duly present the check for payment.

In R. C. L. vol. 3, p. 1242, § 469, the following is said: "The doctrine is well established that if an indorser with full knowledge that he has been discharged from liability by the failure of his indorsee to make proper demand and give due notice of non-payment, promises to pay the note or acknowledges his liability therefor, he thereby binds himself and may be proceeded against as if his liability had been legally fixed in the first instance."

In Corpus Juris, vol. 8, p. 709, § 993, it is said: "It is well settled that if the drawer or indorser, with full knowledge of the neglect of the holder to exercise due diligence, promises to pay the bill or the note, he is held to have waived the consequences of the laches and will stand in the same position as if he had been regularly charged by presentment, demand and notice."

In the notes to the case of Sebree Deposit Bank v. Moreland, by the Kentucky Court of Appeals, 29 L. R. A. 305 (96 Ky. 150, 28 S. W. 153), will be found numerous cases declaring the doctrine announced in the authorities from which we have just quoted.

Our Negotiable Instruments Act treats promissory notes, bills of exchange, and checks as in the same category, and in the case of Stone v. Smith, 30 Tex. 138, 139, 94 Am. Dec. 299, the Supreme Court said: "A party to a bill of exchange, who has been relieved from responsibility thereon through failure of the holder to present it in proper time, may waive the consequences of such neglect. As where the indorser, after full knowledge that he is discharged, promised to pay the bill, it will amount to a waiver."

In principle we see no material distinction between the case of Stone v. Smith and the present one, and we have failed to find that that case has been overruled or modified by our own courts. It would seem that Samuels gave the strongest evidence of a purpose to disregard and waive the negligence of the trust in failing to present the check in due time, for he was not only informed of that fact, but he, after knowledge of that fact, himself paid to the trust the several dividends that had been declared in his favor by the bank and verbally promised to pay the remainder of the original indebtedness. The trial court concluded as a matter of law that there was no waiver and that the verbal promise was without consideration. But in the plaintiffs' petition both the original indebtedness of $664.40 of Samuels and the facts relating to the check and its nonpayment are distinctly set forth in the plaintiffs' petition with the general prayer for relief, and we conclude that the antecedent indebtedness declared upon constitutes a sufficient consideration to support the verbal promise. Section 25 of article 5933, of our Negotiable Instruments Act, provides that: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

And cases such as appear in the report of the case of Sebree Deposit Bank v. Moreland, hereinabove cited, which hold that a subsequent promise to pay a bill of exchange will not bind an endorser who has been released by lack of notice, qualify the ruling by accepting instances where the subsequent promise is supported by a consideration.

We accordingly approve the trial court's findings of fact but conclude that he erred in his conclusions of law, and that upon the uncontested facts of the case the judgment below should have been in favor of the appellant trust. It accordingly is ordered that the judgment below in favor of appellee be reversed and here rendered in favor of the appellant Mary Couts Burnett Trust for the sum of $431.86, together with interest at the rate of 6 per cent. per annum from and after January 1, 1931, and all costs of suit.