## GEORGE W. BLODGETT *v.* EDWARD DURGIN, JR.

### *Promissory note.  Conflict of laws.*

The law of the place of payment of a promissory note determines whether days of grace are allowed upon it, or not. Where no particular place of payment is fixed by the note itself, the place of execution is the place of payment, without regard to the residence of the parties, or the place at which the note is dated.

But *quere,* whether if the holder of a note, payable generally, is not aware that it was executed at a different place from that at which it is dated, he will not be protected, if he charges the indorser by presentment and notice according to the law of the latter place, even though he may not have done so according to the law of the place where the note was in fact executed.

If the holder of a note does not know the residence of an indorser and cannot ascertain it by diligent inquiry, it is sufficient to charge him, if the holder give him notice of its presentment and non-payment at the first opportunity.

If an indorser of a note with a full knowledge of the existence of facts, which in law would discharge him from liability thereon, promise to pay the note, he will be bound thereby.

The facts that three months had elapsed between the maturity of the note and such a promise by the indorser, that the latter had an agent at his residence who attended to his correspondence, and that he had himself received no notice of non-payment, were held sufficient evidence to authorize the court to submit to the jury to find thereon whether, or not, the indorser, at the time of making such promise, was aware that the holder had not taken the proper legal steps to charge him as indorser.

ASSUMPSIT against the defendant as indorser of a promissory note, dated Lebanon, N. H., January 1st, 1856, for one hundred and fifty dollars, signed by one Wood and payable to the defendant, or bearer, in six months from date.

Plea, the general issue, and trial by jury, at the December Term, 1858, in Windsor county,— REDFIELD, Ch. J., presiding.

The indorsement of the note was admitted by the defendant, who also conceded that it was executed by·the maker and delivered to the defendant at St. Johnsbury, in this State, at the time it bore date.   The defendant transferred and indorsed the note to the plaintiff, at Bradford, in this State, about the 20th of January, 1856, in payment of a bill of goods then sold him by the plaintiff.

The plaintiff's evidence tended to show that the defendant was engaged in travelling from place to place selling a patent right, and had no permanent home; that nothing was said by the defendant in regard to his residence at the time of the indorsement of the note, and that the plaintiff knew nothing in regard to his having any fixed place of residence; that the father of Wood, the maker of the note, resided in Lebanon, N. H., and that that fact was known to the defendant, and that he informed the plaintiff, at the time of the indorsement, that the maker resided at Lebanon; that the maker of the note was at St. Johnsbury at the time it was executed, but it did not appear whether his business there was of a permanent character or not, or how long he had then been there, or how long he remained there after the execution of the note; that the note in question was presented to the maker for payment, at his place of residence in Lebanon, on the 1st of July, 1856, in the afternoon, and at no other time, and that payment thereof was then demanded and refused; that for some time previous to the maturity of the note, the plaintiff made diligent inquiry for the defendant at Bradford, and at all other places where he could ascertain that he had been, and tried to learn his residence, if he had any, but could obtain no information in regard to him or his residence, until October, 1856, when he accidentally met him at Royalton, and there gave him notice that he had demanded the payment of the note of Wood, that payment had been refused, and that he should look to the defendant for payment thereof. There was no direct evidence, however, that the plaintiff told the defendant that he had demanded payment of Wood on the 1st of July, or that no notice of non-payment had ever been sent to the defendant by mail. It was not claimed that any notice to the defendant of non-payment was ever mailed by the plaintiff.

The plaintiff's testimony further tended to show that at Royalton, at the time he was notified by the plaintiff, as above mentioned, the defendant promised to pay the note.

The defendant's evidence tended to show that his residence was in Compton, N. H., and that he so informed the plaintiff when he indorsed the note in question, and that he had an agent at that place who attended to his correspondence; that at his interview

Blodgett *v.* Durgin, Jr.

with the plaintiff at Royalton in October, 1856, he did not promise to pay the note, but complained that a portion of the goods, which were the consideration of the transfer of the note to the plaintiff, had not been received by him, and that a portion of those which he had received were of an inferior quality; that he merely proposed to the plaintiff to meet him at the plaintiff's place of business in Claremont, N. H., and promised that if the plaintiff would do what was right, he would then settle and pay him all he was entitled to for the goods which the defendant had received; and that this suit was commenced the day after this interview.

It was further proved that by the laws of New Hampshire three days of grace were allowed upon promissory notes.

1. The defendant requested the court to charge the jury that if the residence of Wood was in New Hampshire at the time he gave the note, the laws of New Hampshire must govern, and determine the time when the same became due and payable, and that as days of grace were allowed by those laws, the demand of payment on the first day of July, 1856, was not a legal demand so as to charge the indorser;

2. That if nothing was said, at the time the note was sold and indorsed at Bradford, about the defendant's residence and address, and if the plaintiff knew that the defendant was round about the country selling his patent, the plaintiff took upon himself the risk of notifying the defendant of demand and non-payment, and should at least have mailed a notice in due season to Bradford, or some other place where he supposed the defendant would most probably be;

3. That if the defendant at Royalton promised to settle or pay the note at some future time at Claremont, it was not a waiver of demand and notice, and if it was, that no suit could be sustained till after expiration of the time named;

4. That to constitute a legal *waiver* of demand and notice, the promise of the defendant at Royalton must have been made with a full knowledge of all the defects in the demand and notice, and be unconditional as it regards time, manner and circumstances.

The court refused so to charge the jury, but did charge them that the demand of the maker of the note was sufficient; that if

the plaintiff was informed of the defendant's post office address before the refusal of the maker to pay the note, he was bound to remember it and give notice of the dishonor of the note as soon, at least, as by the mail of the next day; but that if the plaintiff had no knowledge of the defendant's residence and post office address, and by diligent inquiry could not ascertain either, or where notice would be likely to reach him, until the time of the meeting at Royalton, these facts would excuse the plaintiff from giving the immediate notice of demand and refusal otherwise required, and that the notice given at Royalton, in October, 1856, would be sufficient; that if the defendant, on being informed that demand had been made upon Wood, and that he had refused to pay the note, and knowing that no notice had been given him, promised absolutely to pay the note, although he might not expect to be sued upon it so soon as he in fact was sued, it would nevertheless amount to a legal waiver of notice of the dishonor of the note; but if the defendant only said on that occasion that he would pay what was fairly due the plaintiff, or if his promise fell short of what the court had stated was sufficient to amount to legal waiver of notice, it could have no effect in the case.

The jury returned a verdict for the plaintiff. The defendant excepted to the refusal of the court to charge as requested, and to the charge as above detailed.

*E. Weston* and *Converse & French*, for the defendant.

*Washburn & Marsh*, for the plaintiff.

ALDIS, J. I. The law of the place of payment of a promissory note determines whether in presenting it for payment days of grace shall or shall not be computed. By the law of New Hampshire three days of grace are allowed, but in this State none are allowed.

In the case at bar the note was presented to the maker at Lebanon, N. H., according to Vermont law, without an allowance for days of grace. The defendant claims that the law of New Hampshire should govern as to the presentment for payment, and therefore that he is not liable as indorser.

The note was not made payable at any particular place, but was payable generally. Such a note is governed by the law of the place where made, for the parties cannot be said to have reference to the law of any other place; Story on the Conflict of Laws, sec. 317.

The bill of exceptions states it was conceded that the note was made and delivered at St. Johnsbury, in Vermont. It would seem to be clear, therefore, that the law of Vermont must govern it.

It is objected by the defendant that there was evidence to show that the parties to it intended that it should be governed by the laws of New Hampshire, and that this evidence should have been submitted to the jury. This evidence was, as the defendant claims. first, that the maker and payee resided in New Hampshire when the note was made; and, secondly, that the note was dated at Lebanon, N. H. As the place of payment determines whether days of grace should be allowed or not, the inquiry arises, do the facts here shown tend to prove that the note was to be payable in New Hampshire? We think not. The place of payment is a material part of the contract. If the note is payable at a particular place, parol evidence is not admissible to show it payable elsewhere, or payable generally. So if payable generally it can not be shown by parol that it was intended to be payable at any particular place. By making it payable generally, the parties must be presumed to have intended that the law of the place where it was made should govern; otherwise they would have made it payable elsewhere.

It is urged, however, that as it is dated at Lebanon, New Hampshire, and that is *prima facie* the place where it was made, this shows that the parties intended to have it payable in New Hampshire.

The place of date is not a part of the contract. It is not material to the validity of the note, and is always open to be explained. It does not make that the place of payment; Story on Promissory Notes 49; 2 Watts & Serg. 140; 3 McCord 394; Chitty on Bills 146.

In this case it is conceded that the place of making the note is in Vermont, and any presumption that might have been drawn

from the date as to a different place of making the note, is conceded to be wrong. The place of date is said to be remote, and slight proof that the maker resides there; 3 Comst. 274; 3 Denio 145; 24 Wend. 358.

The note may have been so dated to indicate the residence of the maker.

If the plaintiff, not knowing that the note was made in Vermont, had been misled by the date to believe it made in New Hampshire, and had acted accordingly in presenting it for payment, the question would have been very different from the one now before us. But having ascertained the true place of making and acted upon it, we think the original parties to the note cannot hold him concluded by what at most is but a *prima facie* presumption. They could have concluded all subsequent holders by making the note payable in New Hampshire, but this they did not do. Neither can the residence of the maker and payee, if both are shown to reside in New Hampshire, control the note so as to make it subject to New Hampshire laws. No distinction is made between foreigners and citizens as to the operation of the *lex loci contractus*. It is the *place* where the contract is made that governs, not the *residence* of the contracting parties.

This is the doctrine as laid down by Judge STORY in his Conflict of Laws sec. 279. And the same principle is directly recognized in *Bryant* v. *Edson*, 8 Vt. 325; and in *Bank of Orange Co.* v. *Colby*, 12 N. H. 520. But we think the evidence did not tend to show that the maker resided in New Hampshire when he made the note. It is too indefinite on that point to fairly raise the question.

II. We do not think the fact that the indorsement was made at Bradford, when it appears that the indorser had no residence there, and was there only occasionally as he traveled about the country peddling, made it incumbent on the plaintiff to send a notice to the defendant at that place.

Under the charge of the court, the jury must have found that the plaintiff did not know, and by diligent inquiry could not ascertain where the defendant resided, or where notice would be likely to reach him, until he met him at Royalton and notified him. By all the authorities this was sufficient.

III. The jury must have found that the defendant was informed at Royalton that demand had been made of Wood, (and by demand we must understand *legal* demand) and that he had refused to pay; and that the defendant then knew no notice had been given him or his agent; and that under these circumstances he promised absolutely to pay the note. This was a waiver of the want of previous notice and bound the defendant, for it showed knowledge of the facts which would in law discharge him from his indorsement, and that is all that is required; *Tibbetts* v. *Dowd*, 23 Wend. 379; 1 Aik. 39, *Nash* v. *Harrington*; 3 Kent Com. 113; Edw. on Prom. Notes 650-1; Chitty on Bills 501, and numerous cases cited in notes; Story on Prom. Notes sec. 362.

It is said there was no evidence tending to show that he knew no notice had been given. But when we consider the lapse of time between the time of payment and the meeting at Royalton, the residence of the defendant, his having an agent at his residence who attended to his correspondence, we think these circumstances, taken in connection with the promise made at Royalton, justified the court in putting the case to the jury upon this point as it was presented in the charge.

Judgment affirmed.