# Newbold *v.* Boraef, Appellant.

*Promissory notes—Notice of protest.*

A promissory note, due Dec. 11, 1891, was sent by the holder, who lived in Media, to a notary in Philadelphia on Dec. 10, 1891, by registered letter, to present it for payment. The notary was ill at home on the day the letter arrived, which was Dec. 11, and the letter carrier took the letter back to the post office. On the following day, Dec. 12th, the holder sent his son to Philadelphia, who procured the letter from the post office, and returned it to his father. The holder then took the note to another notary, who demanded payment and protested the note the same day, Dec. 12th, which was Saturday. Notice was delivered to the indorsee by the notary on the following Monday morning, Dec. 14th. *Held,* that the holder had used due diligence as to protest and notice.

*Accommodation notes—Indorsement—Defences.*

A promissory note indorsed by an accommodation indorser is valid in

the hands of a person who discounts it before maturity, although no consideration has passed from the maker to the accommodation indorser.

Where a promissory note is not indorsed in the ordinary course of business, nor for value, but at the request of the maker, and for his benefit, the indorsement is an accommodation indorsement for the maker.

Argued March 22, 1893.    Appeal, No. 202, Jan. T., 1893, by defendant, L. Shuster Boraef, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1891, No. 439, on verdict for plaintiff, William R. Newbold.    Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit on promissory note.

At the trial, before ARNOLD, J., it appeared that the note in suit was as follows:

"$3,500.    PHILADELPHIA, December 8, 1890.

" One year after date I promise to pay to the order of L. Shuster Boraef thirty-five hundred dollars, at No. 3701, Hamilton street, without defalcation, value received.

"E. R. BRYAN.

Endorsed: " L. Shuster Boraef."

Defendant introduced evidence which tended to show that he was drunk at the time he indorsed the note. Defendant also claimed that the note had not been protested with due diligence.

The court charged as follows:

." This is an action brought by Mr. Newbold, the plaintiff, on a promissory note given by Mr. E. R. Bryan and indorsed by L. Shuster Boraef, the defendant, dated Dec. 8, 1890, for $3,500 in one year. That note was payable from Dec. 8 to 11, 1891. Mr. Newbold says it was sent to the notary in Philadelphia on Dec. 10, 1891, by registered letter, for the purpose of having it presented for payment, and, if not paid, protested. It appears that the notary to whom it was sent was sick at home the day the letter arrived, Dec. 11th, and the letter carrier took the letter back to the post office, and the next day Mr. Newbold, not having heard from the notary, sent his son up to the city, who, learning that the letter was still in the post office, went to the post office, got the letter and note out and returned them to his father, who took the note to another notary, who demanded payment and protested the note the same day, Dec. 12th, which was Saturday. Notice was delivered to the

indorsers by the notary.   Mr. Boraef got his on the following Monday morning, Dec. 14th.

" If you believe that testimony, that the note was delayed in the mail for that cause, the protest was made properly and in time, and Mr. Boraef is liable as indorser upon that note, unless the plaintiff is not a bona fide holder for value before maturity.   It seems to me that is the main point in the case, not so much whether the plaintiff held it as security for any antecedent debt, but whether or not he was the bona fide holder of it before maturity by reason of having discounted it.   The note was dated Dec. 8, 1890, and it first was pledged by Mr. Bryan with Mr. Newbold as security for another note of Bryan.   In February, 1891, Mr. Newbold says that that condition of things was changed, that the note which he had against Bryan was paid, and on that day he discounted this note, took out the discount, and put to Mr. Bryan's credit, or the credit of the Wood Lumber Company, which is admitted to be the same as Mr. Bryan, the amount of this note, less the discount, that is, $3,322.67.   If that is true, if you believe Mr. Newbold did discount the note in February, 1891, before it became due, he is what we call a bona fide holder of the note before maturity.

" [The next question is, how was the note given.   Was it given for value received at the time or as an accommodation note ?] [3]   Or can you extract from the evidence, for I confess I cannot, that the note was given by Boraef to Bryan for the purpose of raising money upon it for his, Boraef's, benefit. The note was made by Mr. Bryan, and he, desiring to get the benefit of Boraef's indorsement, gave the note first to McLaughlin, as testified to by the witnesses, and McLaughlin, who was called by the defendant, says he had the note in his possession for the purpose of getting it indorsed by Mr. Boraef, and he could not do it.   Then the note was taken from McLaughlin and went into the hands of Flood, and Flood had it three or four days or a week for the purpose of getting Boraef to indorse it.   Finally, on the day the note was indorsed, Mr. Flood says he telegraphed Bryan to meet him at the market house, and that the meeting was adjourned across the way in Reisser's restaurant, where the deal took place.

" Mr. Boraef is sick at home.   No deposition of his has been

taken showing why he gave that note. Flood and Bryan both swear that the note was given to Mr. Bryan as an accommodation; that is, a note given for no value whatever. If it was given as an accommodation note, Mr. Bryan had a right to do with it as he pleased. He could pledge it for an old debt or have it discounted and get the money and keep it. [If it was an accommodation note indorsed by Mr. Boraef for Mr. Bryan's accommodation, and Mr. Bryan took it down to Newbold and Newbold discounted the note in February, 1891, his title to it is clear, and Boraef's defence of want of consideration is no defence at all, to payment of the note.] [3]

" There was another transaction the day the note was indorsed. Bryan said he loaned Boraef $2,500 on a check, and that the check was subsequently paid. That was one transaction by itself according to Bryan's statement. Flood said he saw the money pass, but does not know how much it was. That loan is altogether out of the note transaction according to Bryan's statement. He makes no pretence that this note was given for money, and said it was given simply for accommodation. It being an accommodation note, while Bryan himself could not enforce it, nevertheless, if Newbold bought it and discounted it before it became due, he is entitled to payment, and the defence of accommodation note is no defence whatever.

" There is another view of the case which defendants seem to think is sustained by some evidence, although I do not remember it. Perhaps you do. And that is, that the note was indorsed by Boraef for the purpose of getting money for his benefit, and that Bryan was to take the note away and get the money and bring it back to Mr. Boraef. I do not see any evidence of that. Counsel said something about it, but perhaps it escaped my attention. I leave it to you to say whether such evidence appears in the case as that. Of course, if the note was made for Mr. Boraef's benefit, for the purpose of raising money for his benefit, if Bryan was his agent to go for and get the money for his benefit, and instead of doing it he pledged it for an old debt, Mr. Boraef's defence to this case would be good. But if instead of pledging it for an old debt he sold the note to Mr. Newbold, and Mr. Newbold paid the money on it, then it makes no difference if Mr. Bryan did keep the money instead of giving it to Mr. Boraef, for in that case Mr. Newbold's title is good, and Mr. Boraef must pay the note.

" It seems to me that the questions at stake are simple questions of fact.  [In the first place, how was the note made?  If it was made as an accommodation note, and was taken down to Newbold and left as security, or, if not left as security, it was discounted, his title to it is good, and your verdict ought to be for the plaintiff.]  [3]   Or if it was made for the benefit of Mr. Boraef, and Bryan took it down to Newbold and had it discounted before it became due, Newbold is a bona fide holder for value before maturity, his title to the note is good, and he is entitled to a verdict at your hands, notwithstanding Bryan did not give the proceeds of the note to Mr. Boraef."

Plaintiff's point was among others as follows:

" 3. Under all the evidence in the case the requirements of the law as to presentation, demand and notice of nonpayment have been sufficiently complied with.  *Answer :*  I affirm that, if you believe the testimony of Mr. Newbold's son, that he came up to Philadelphia and found the note delayed by reason of post office authorities keeping it, as he says." [2]

Defendant's point was, among others, as follows:

" 3. There is no sufficient evidence from which you will be justified in concluding that Newbold was an innocent holder before maturity of the note for a money or other valuable consideration, and if you believe from the evidence that Boraef indorsed and delivered the note for one purpose, and that the person to whom it was delivered used it for another, your verdict must be for the defendant."  Refused. [1]

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were, (1–3) instructions, quoting them.

*E. Hunn Hanson, Charles Carver* with him, for appellant, cited : On the question of the character of the note : Hutchinson v. Boggs, 28 Pa. 294 ; Real Estate Investment Co. v. Smith, 1 Adv. Rep. 590 [s. c. 148 Pa. 496] ; Cummings v. Boyd, 83 Pa. 372 ; Maynard v. Bank, 98 Pa. 250.   On the question of notice : Bank v. Carneal, 2 Peters, 543 ; Cassidy v. Kreamer, 22 W. N. 109 ; Smith v. Fisher, 24 Pa. 222.

*Alex. Simpson, Jr.,* for appellee, cited : On the character of the note : Hey v. Frazier, 1 Monaghan, 759 ; Dingman v. Am-

sink, 77 Pa. 114; Phelan v. Moss, 67 Pa. 59; Smyth v. Hawthorn, 3 Rawle, 357; Flick v. Devries, 50 Pa. 267; Spering v. Laughlin, 113 Pa. 209; Gates v. Watt, 127 Pa. 20; Sieger v. Bank, 132 Pa. 308. On the question of the sufficiency of notice of protest: Daniel, Neg. Inst., 4th ed., § 1068; 3 Randolph, Com. Paper, § 1326; Muncy Borough Sch. Dist. v. Com., 84 Pa. 470; Windham Bank v. Norton, 22 Conn. 213; Pier v. Heinrichshoffen, 67 Mo. 163; House v. Adams, 48 Pa. 261; Stephenson v. Dickson, 24 Pa. 148; Cassidy v. Kreamer, 22 W. N. 109; Story, Prom. Notes, 7th ed. § 319; Moore v. Somerset, 6 W. & S. 262.

PER CURIAM, April 10, 1893:

Three questions are raised on this record. The first was over the bona fides of the plaintiff as holder of the indorsement sued on. This was a question of fact for the jury. The evidence would have justified a different verdict; we cannot say however that the verdict rendered is without any support whatever from the testimony, or that the case should have been withdrawn from the jury.

The second question is over the sufficiency of the notice to the indorser, of nonpayment. Under the evidence it is not easy to see neglect on the part of the plaintiff to act with promptness. The delay was with the persons having charge of the registered letters in the post office and not with the plaintiff.

The third question is in regard to the character of the indorsement sued on. It does not appear to have been made for value, nor in the ordinary course of business, but at the request of Bryan and for his benefit. Such an indorsement would be properly described as made for the accommodation of Bryan, the maker. It had no other purpose, and rested on no business transaction.

The assignments of error are not sustained and the judgment is affirmed.