# Young v. Exchange Bank of Kentucky

(Decided February 18, 1913.)

## Appeal from Fayette Circuit Court.

1. Bills and Notes—Accommodation Endorser—Who Is—Notice to of Dishonor of Paper Necessary.—An accommodation endorser is one who signs his name to paper without any consideration therefor, and for the sole purpose of giving credit to some other party to the paper, and to hold an accommodation endorser liable it is necessary that the paper should be presented for payment, protested for non-payment, and notice of its dishonor given to him.

2. Bills and Notes—Accommodation Endorser.—Where the payee of a bill signed his name on the back of it and afterwards, and before the delivery of the paper, a third party, for the sole purpose of giving the payee credit, signed his name under that of the payee, and the bill so endorsed was discounted by a bank at the instance of the payee, the party who endorsed the note was, under the law merchant, as well as under the present Negotiable Instruments Law, an accommodation endorser in the legal and technical sense of the words, and not a surety, maker or guarantor of the paper.

3. Bills and Notes—Circumstances That Will Excuse Presentment for Payment and Notice of Dishonor to an Endorser.—The circumstances that will excuse the presentment of commercial paper for payment and the giving of notice of its dishonor to parties entitled to notice, will be sufficient when the delay is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct or negligence, or is due to some condition beyond the control of the holder that makes the giving of notice impracticable or impossible.

4. Bills and Notes—Circumstances That Will not Excuse Presentment for Payment and Giving of Notice—Facts Stated.—The payee of a bill two days before its maturity delivered to the bank holding the paper his check for the amount of the bill, which the bank accepted in payment of it and surrendered the bill to him. In due course, and four days after the maturity of the paper, the bank on which the check was given, protested it for non-payment and at once notified the bank that had accepted the check in payment of the bill, and this bank on the same day notified an accommodation endorser of the bill of the non-payment of the check. The accommodation endorser had no notice or information of the transaction by which the bank accepted the check and surrendered the bill until he received notice of the dishonor of the check. Held: that the fact that the check was worthless did not excuse the presentment of the bill and notice of its dishonor, and the endorser was released by the delay in giving him notice, which could have been given to him on the day the bill matured or the following day.

5. Bills and Notes—Promise by Endorser to Pay After Being Re-

. leased for Want of Notice not Binding.—The promise of an accommodation endorser to pay a bill from the payment of which he has been released by the failure to give him due notice of its dishonor when it is without consideration, is not binding on him and creates no new liability.

6. Bills and Notes—Liability of Endorser not Increased by Fact that Failure to Give Notice did not Cause Him Damage.—The fact that an endorser has not suffered any damage because of the failure to give him notice in due time of the dishonor of the paper does not affect his liability or make him responsible when otherwise he would not be.

SHELBY & SHELBY, for appellant.

JOS. S. BOTTS, GEO. C. WEBB, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On June 11, 1903, E. B. Carr drew a thirty-day sight draft on himself, payable to W. A. Young, for $4,000. He accepted the draft, which was payable at the Market Street National Bank of Philadelphia, by writing his name across the face of it, and W. A. Young endorsed it by writing his name on the back of it.

With the draft in this condition, it was presented for discount to the appellee, Exchange Bank of Kentucky. The bank officers declined to accept the draft unless it was endorsed by the appellant, Mrs. Amelia A. Young, who was the mother of W A. Young; whereupon W. A. Young procured his mother to endorse the draft, which she did by writing her name on the back of the draft under the name of W. A. Young. After the draft was thus endorsed, it was accepted and discounted by the bank.

On July 9, 1903, two days before the maturity of the draft, Young and Carr came to the bank and requested a renewal of the loan, but the bank officers declined to do this, and thereupon Carr drew a check on the Market Street National Bank of Philadelphia in favor of W. A. Young for $4,000, and Young endorsed the check and delivered it to the bank in payment of the draft, which, after being stamped "paid," was then delivered to one of them. In due course of business the bank sent the check to the Market Street National Bank, and on July 15th the Market Street National Bank protested the check and immediately notified the appellee Bank. On July 15th the cashier of the appellee bank went to see Mrs. Young and informed her that the check given for the draft which she had endorsed had been protested, and that the bank would look to her for the payment of

the draft. The cashier and Dr. Sherley, who was an officer of the bank, testify that Mrs. Young on this occasion, as well as at other times subsequently, promised to pay the bank the amount of the draft. Mrs. Young admits having conversations with the cashier and Sherley in reference to the matter, but denies that she in any manner, or at any time, agreed to pay the draft or become responsible for the amount of it.

The only issue of fact in the case relates to the conversations had between Mrs. Young and the officers of the bank after the check had been returned protested, and as Mrs. Young could not be made liable even if she promised to pay the draft at the times testified to by the cashier and Sherley, as there was no new consideration for the promise, if one was made, it is not necessary to notice further this feature of the case. Mechanics & Farmers Savings Bank v. Katterjohn, 137 Ky., 427; Sebree Deposit Bank v. Moreland, 96 Ky., 150.

The bank, failing to collect the draft from any of the parties, brought this suit against Mrs. Young, and on a trial before a jury, a verdict was returned in favor of the bank, and judgment entered accordingly. Mrs. Young asks a reversal of this judgment upon the ground that she was merely an accommodation endorser of the paper and was discharged from liability on it by the failure of the bank to protest the paper at its maturity and give her notice of its dishonor.

In answer to this the bank insists: (1) That Mrs. Young was not an endorser of the paper in a legal and technical sense, and therefore was not entitled to notice of its non-payment; (2) That even if Mrs. Young should be treated as a legal and technical endorser of the draft, it was excused from giving her notice of its dishonor sooner than it did by reason of the fact that before its maturity it accepted in good faith the check given for the payment of it, and believing that the check would be paid, delivered the draft, as before stated, and did not have possession of it when it matured on July 11, or have any notice that the check would not be paid until July 15th, on which date it notified Mrs. Young of the protest of the check.

Upon the facts, about which there is no dispute, we may say at the outset that if Mrs. Young was, in the legal and technical sense, an accommodation endorser of the paper, she was released from liability by the fail-

ure of the bank to protest it for non-payment at maturity and give her notice, as it could have done on the same or the next day, unless it be that the circumstances connected with the acceptance of the check and the delivery of the draft excused the bank from the duty of protest and notice.

In disposing of the case we will first consider the attitude that Mrs. Young occupied toward the draft. In behalf of the bank it is argued by counsel that, as Mrs. Young signed her name on the back of the draft before it was delivered to the bank, for the sole purpose of giving credit to Carr and Young, and to enable them to secure money from the bank, which they did on her credit, that she was never either the payee, or assignee, or owner of the draft, and therefore could not transfer title to it or put it in circulation, and so was not an endorser in the legal meaning of the word, but a surety, maker, or guarantor of the paper, and consequently not entitled to notice.

As the transaction occurred before the adoption in this state of what is known as the "Negotiable Instruments Law," and we had no statute treating of the rights and liabilities of persons who occupy toward commercial paper the attitude of Mrs. Young, the question whether she should be treated as a surety, maker, or guarantor, or as an accommodation endorser in the legal meaning of the words, must be settled according to the law merchant as administered in this state, if the matter has been put at rest by the decisions of this court, and if it has not been, then we will determine it as a new question upon what we conceive to be correct principles of commercial law.

We are led to say that we will adopt the rule announced in this state, if one has been announced, because before the adoption of the Negotiable Instruments Law, there was great diversity of opinion among the courts of the country on this subject, and the courts of each state followed the precedents they had laid down without attempting to modify or change them to conform to the ruling in other jurisdictions. Some of the courts held that a party who signed his name on the back of a bill, as Mrs. Young did, for the sole purpose of giving credit to the party for whose accommodation he endorsed, should be treated as a joint maker or surety.

Other courts held that such a party was a guarantor, and others that he was an endorser.

In this state the exact question submitted by counsel for the bank has never been directly adjudicated by this court, although in a number of cases, beginning with the early history of the court, it has been announced that to hold an accommodation endorser liable it was necessary that the paper should be presented for payment and if payment refused, protested for non-payment, and notice of its dishonor given to the accommodation endorser.

It has also been well settled by this court that an accommodation endorser is one who signs his name to paper without any consideration therefor, and for the sole purpose of giving credit to some other party to the paper, and it is not disputed that Mrs. Young was an accommodation endorser in the sense that she signed her name on the back of the note without receiving any consideration or benefit therefor, and for the sole purpose of giving credit to Carr and Young. But notwithstanding the fact that her attitude on the paper fulfilled all the requirements necessary to constitute her an accommodation endorser, it is yet insisted that because she did not at any time own the paper or have title to it, or transfer the title to some other party, she is not to be considered an endorser in the sense that it was necessary, to hold her liable, that the paper should have been presented and protested and notice given her of its dishonor.

In support of this position we are referred by counsel to a number of decisions from other courts, some of which directly hold that an endorser such as Mrs. Young was, is not released from liability by the failure to present the paper or protest it or give notice of its nonpayment. Among the representative cases so holding is Sibley v. American Exchange National Bank, 97 Ga., 126, 25 S. E. Rep., 470. In the course of its opinion in that case the court said:

"The contract of endorsement is one which in its very essence involves the transfer of title to promissory notes and bills of exchange; and before one can become an endorser at all, or be classed as such, his contract must involve the transfer of title to that class of securities. The mere fact that one's name appears to have been written upon the back of a note does not make him

necessarily an endorser of that paper. His liability
is not to be determined by the physical relation of his
name to the paper, but by his legal relation to the con-
tract. If his legal relation to the contract were such
that in the course of its due transmission from one
holder to another, the name of the person appearing
on the back was properly endorsed in order to accom-
plish that result, then he may be properly classed as
an endorser, whether his name was placed upon the back
of the paper in the capacity of a bona fide holder trans-
ferring to another, or in the capacity of one who, without
consideration, but for the accommodation of the real ben-
eficiary for whom the paper was drawn, had endorsed
his name upon it, but if he be a stranger to the note,
the legal title thereto never having been in him, nor,
in fact, passed through him as an endorsee, a mere
blank endorsement of his name upon it renders him
liable as a guarantor or surety, as his contract may be,
and without the right to notice of non-payment.''

Another is Ewan v. Brooks-Waterfield Co., 55 Ohio
State, 596, 35 L. R. A., 786, where the court said: ''Pre-
cisely what is the nature of the legal obligation con-
tracted by a stranger who endorses his name in blank
on the back of a negotiable, promissory note before or
at the time it takes effect is a question upon which the
courts have widely differed, some holding that his ob-
ligation is that of a second endorser, others have held
him liable as a guarantor, and still others as a maker,
with the rights of a surety. The rule established in
this state is that when the name of such third party
appears upon the note at the time it takes effect, his
undertaking rests upon the consideration which supports
the note, and the presumption is he intended to be lia-
ble as a surety for its payment, and is held accordingly
unless he can show that there was a different agree-
ment or understanding between the parties, which it
is competent for him to do.''

Counsel also insist that the opinion of the Supreme
Court of the United States in Rey v. Simpson, 63 U. S.,
341, 16 L. Ed., 260, gives support to their contention.
We do not so understand that case. It appears from the
opinion that Rey executed a note to Simpson, and simul-
taneously with the execution of the note Marshall &
Co. placed their names on the back of it for the pur-
pose of giving credit to the maker Rey. It was not en-

dorsed by the payee Simpson or any person except them, and the court said:

"They placed their names there at the inception of the note not as a collateral undertaking but as joint promissors with the maker, and are as much affected by the consideration paid by the plaintiff (Simpson) and as clearly liable in the character of original promissors as they would have been if they had signed their names under the name of the other defendant (Rey) upon the inside of the instrument."

Under these circumstances the court ruled that Marshall & Co. should be treated as joint promissors with the maker, and not as endorsers. In the subsequent case of Good v. Martin, 95 U. S., 90, 24 L. Ed., 341, the court, after referring to the Simpson case, again laid down the doctrine that when a third party, at the time the note is made, puts his name on the back of it before it has been endorsed by the payee or any one else, he becomes a joint maker of the paper. But in neither of these cases did the court hold that an endorser subsequent to the payee should be treated as a joint maker, surety or guarantor, nor do we find in these opinions any intimation that this rule should be applied.

In the full note to Cadwallader v. Hirshfeld, 72 Am. St. Rep., 671, there will be found a reference to the courts holding these different views referred to, and it does not seem necessary that we should, in disposing of this case, make further allusion to the opinions of other courts.

Coming now to the decisions of this court, we find that in Lawrence v. Ralston, 3 Bibb, 102, decided in 1813, the facts were these: Aaron Burr on December 9, 1806, at Frankfort, Kentucky, drew a bill of exchange on George M. Ogden, of New York, requesting him at 120 days sight to pay Charles Lynch, or order, $700. The bill was endorsed by Lynch to Ralston, by Ralston to Sebastian and by Sebastian to Lawrence. Payment being refused by the drawee of the bill, Lawrence brought suit on it against Ralston, who defended upon the ground that he had been released from liability by the failure to give him due notice of the dishonor of the paper. In holding that Ralston was an accommodation endorser, entitled to notice, and released for failure to give it the court said:

"Every endorser of a bill impliedly undertakes that

it will be accepted upon presentment to the persons upon whom it is drawn and paid when it becomes due, if presented in proper time for that purpose, and in default of acceptance or payment is liable to the endorser or holder on due diligence being executed on his part. But whether the bill be inland or foreign, to make the endorser liable he should have notice of its non-acceptance, if it is payable after date, or at a certain time after sight, in reasonable time, unless under particular circumstances such notice is made necessary, and if notice is not given in such cases where it is necessary in reasonable and convenient time the endorser is discharged from his liability.''

In Taylor v. Bank of Illinois, 7 T. B. Mon., 567, Taylor and others endorsed a bill of exchange for the accommodation of Nicholas Casey, the drawer of the bill, and it was discounted by the bank. In a suit by the bank on the bill against Taylor, one of the accommodation endorsers, he pleaded his discharge from liability on account of the failure to give him notice of the dishonor of the paper. In holding this a good defense the court said:

''Having seen that the presentment is supplied and the dishonor of the bill established, we shall turn our attention to another indispensable requisite, that is, notice to the defendant of the dishonor of the bill. We say indispensable because it is well settled by high authority that an accommodation endorser is entitled to strict notice.''

In Todd v. Edwards & Co., 7 Bush, 89, Gray and Todd drew a bill of exchange on R. P. Pepper, payable to E. H. Taylor sixty days after date. Pepper accepted it, and Taylor, the payee, endorsed it to Temple, and he endorsed it to Todd, by whom it was endorsed to Edwards & Co. In a suit on the bill by Edwards & Co., Todd set up the defense that he was only an accommodation endorser and was released from liability by the failure to give him notice of the non-payment of the bill. In sustaining this defense the court said:

''If a bill be drawn for the accommodation of the drawer or acceptor, and endorsed by the payee and subsequent endorsers, if the holder intends to hold any or all of said endorsers responsible to him, as many as he intends to make responsible are entitled to notice of the dishonor of the paper, because the endorser who pays it

has a right to hold the prior parties on the bill responsible to him, and he should be notified so that he may take the necessary steps to secure himself.''

In Mechanics & Farmers Savings Bank v. Katterjohn, 137 Ky., 427, it appears that one Rinkliffe executed a note payable to F. W. Katterjohn, which was endorsed by him and also by Thomas Wilson and Company, a corporation. Katterjohn endorsed the note for the accommodation of Rinkliffe, who discounted it to the bank, and in a suit by the bank on the note, Katterjohn defended on the ground that he was an accommodation endorser and discharged from liability by reason of the fact that the note was not presented for payment and he had no notice of its dishonor. In excuse of its failure to comply with the requirements necessary to hold an endorser the bank contended that Katterjohn was not an accommodation endorser but merely a surety, and therefore not entitled to notice. But the court rejected this contention and held that Katterjohn was an accommodation endorser and not a surety, and so entitled to notice. It is true this case was ruled by the provisions of the Negotiable Instruments Law, but it illustrates the prevailing doctrine in this state that a party who signs his name on the back of a note is an accommodation endorser.

Counsel for the bank while conceding the rule to be firmly established in this state that in order to make liable an accommodation endorser there must be presentment, protest, and notice, yet insist that the cases cited are not controlling authority for the position taken by Mrs. Young, because in each of them it appeared that the note in question was transferred by the endorser making the defense to another endorser, and therefore the accommodation endorser making the defense was a link in the chain of title to the note, while Mrs. Young was not, and it is upon this narrow ground they rest the argument that Mrs. Young, although an accommodation endorser in the usual and ordinary acceptation of the word, should be treated as a maker or surety or guarantor of the note.

It is true that in these cases it appeared that there was more than one endorser, and that the endorser making the defense transferred the paper to a subsequent endorser, but as all the endorsements were merely for accommodation we do not regard the unsubstantial circumstance that there happened to be more than one ac-

commodation endorser as creating any material difference in the attitude of the parties to the paper.

It is quite difficult to understand the difference between the attitude of Mrs. Young on this paper as it stands and her attitude if the name of some other endorser appeared subsequent to her name, although it would not be seriously contended by counsel for the bank that if her name had been followed by a subsequent endorser for accommodation she would have been released. In other words, the argument, as we understand it, comes to this: that if John Smith, for the accommodation of Carr and Young, and for the purpose of giving them better credit, had signed his name on the back of the note under Mrs. Young's name, she would be an endorser in the strict sense of the term, but because the bank was willing to accept the paper with her endorsement alone, she is to be treated as a surety or maker or guarantor, and not as an endorser of it. It seems to us that this is an attempt to make a distinction without a difference, and an effort to convert an accommodation endorser into a surety or a maker or a guarantor without any good reason for so doing.

Therefore if the question should be treated as an open one in this state, and if the cases to which we have referred should not be regarded as exactly in point, we would, nevertheless, hold with the courts of New York, Connecticut, Indiana, Pennsylvania, Oregon, Alabama, California, Mississippi, and Wisconsin that Mrs. Young was an accommodation endorser of the note in the legal signification of the word, and under the facts of this case, not liable, and we are strongly confirmed in the correctness of this conclusion by the provisions of the Negotiable Instruments Act and the construction that has been given to these provisions.

The Negotiable Instruments Act is with few exceptions merely a codification of the general principles of the law merchant as it was understood and applied in states like ours that had no statute on the subject. It was prepared to remove the confusion and uncertainty that existed in commercial affairs caused by the lack of uniformity in the administration of commercial law by the courts of the different states; and it was not the intention of its framers to depart from any well settled and sound principle of commercial law, but rather to incorporate into

this statute those principles of commercial law that experience had pointed out as being reasonable and just and sound in their practical application.

Looking now to this law which has been adopted in nearly all the states, and which is contained in section 3720-B of the Kentucky Statutes, we find in section 17 of the Act that "Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an endorser;" and in section 29 that "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person;" and in section 63 that "A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an endorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity;" and in section 64 that "Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as an endorser in accordance with the following rules : * * * If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee;" and in section 66 that "Every endorser who endorses without qualification, warrants to all subsequent holders in due course * * * And, in addition, he engages that on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and if the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent endorser who may be compelled to pay it," and in section 89 that "Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each endorser, and any drawer or endorser to whom such notice is not given is discharged."

Nowhere in this act do we find any suggestion or intimation that an accommodation endorser is under any circumstances to be treated as a maker, surety, or guarantor of the paper, or otherwise than as an endorser in the strict legal meaning of the word or that a party who endorses a note for the accommodation of another is converted into a maker, surety, or guarantor by the mere

circumstances that no other party subsequently endorses the paper, or that the attitude of an accommodation endorser is in any manner affected by the fact that he is the only endorser. That we are correct in this interpretation of the rights and liabilities of an accommodation endorser under the provisions of the Negotiable Instruments Law is supported by ample authority.

In Rockfield v. First National Bank, 77 Ohio State,· 311, 14 L. R. A. (n. s.), 842, the question before the court was whether persons who had signed their names on the back of a negotiable note were to be treated as sureties, or as endorsers entitled to presentment, protest and notice, and the court said in substance, that before the adoption in Ohio of the Negotiable Instruments Law such persons would be treated as sureties, but that since the adoption of that law, and under its provisions, they were to be treated as endorsers. The same conclusion as to the proper construction and effect of the Negotiable Instruments Law in relation to the attitude of endorsers was reached in Toole v. Crafts, 193 Mass., 110, 118 Am. St. Rep., 455; McLean v. Bryer, 24 R. I., 599; Deahy v. Chocquet, 28 R. I., 338, 14 L. R. A., (n. s.), 847; and Baumeister v. Kuntz, 53 Fla., 340, although these courts formerly held with the Ohio court, also by this court in the Katterjohn case *supra* and in First Nat. Bank v. Bickel, 143 Ky., 754.

Without further elaboration of our views on this feature of the case, we hold, to sum up the matter, that Mrs. Young was an accommodation endorser and released from liability on the bill by the failure of the bank to present it for payment, protest it and give her notice on July 11th, or the following day of its non-payment, unless the failure to do these things was excused.

Taking up the second proposition advanced by counsel for the bank we find it laid down by all the authorities on commercial paper that the failure to present paper in due time for payment and to give notice of its non-payment, will be excused by accident or misfortune not attributable to the fault or voluntary act of the holder that makes it impracticable or impossible to do these things. The circumstances that will operate to excuse presentment and notice are stated in Story on Promissory Notes, section 257, as follows:

"(1) Inevitable accident or overwhelming calamity; (2) Prevalence of a malignant disease which suspends

the ordinary operations of business; (3) The presence of political circumstances amounting to a virtual interruption and an obstruction of the ordinary negotiations of trade; (4) The breaking out of war between the country of the maker and that of the holder; (5) The occupation of the country where the parties live, or where the note is payable, by a public enemy, which suspends commercial intercourse; (6) Public and positive interdictions and prohibitions of the state which obstruct or suspend commerce and intercourse; (7) The utter impracticability of finding the maker or ascertaining his place of residence.''

In Story on Bills of Exchange, section 327, the foregoing excuses are substantially adopted, as they are in Parsons on Bills and Notes, volume one, page 460, and in Randolph on Commercial Paper, volume three, sections 1320-1355, and in Daniel on Negotiable Instruments, volume two, section 1170.

The sum of the principle announced in these text books is stated in the Negotiable Instruments Law, sections 81 and 113, where it is said that delay in making presentment or in giving notice of dishonor ''is excused when the delay is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct or negligence.''

As illustrative cases on the subject we select out of a number the following: In House v. Adams & Co., 48 Penn., 261, and in Berry v. Southern Bank, 2 Duv. 379, it was held that the cessation of mails and commercial intercourse during the late war between the states was a sufficient excuse for the omission to give due notice of the dishonor of a bill.

In Wilson v. Senior, 144 Wis., 380, it was held that the sickness of the holder of the note, if it was not only sudden but so severe as to prevent him from making the presentment and giving notice of non-payment, would furnish a good excuse.

In Windham Bank v. Norton, Converse & Co., 22 Conn., 213, it was held that where the failure to make presentment of a bill was caused by the mistake of the postmaster where it was mailed, this excused the failure to present it.

In Garver v. Downie, 33 Cal., 176, it was held that where a notary in good faith made diligent inquiry of those most likely to know the residence of the endorsers,

and acted upon the information so obtained in mailing them notice, the endorsers were not released, although the notice was sent to the wrong place.

In Salisbury v. Bartleson, 39 Minn., 365, it was held that where the party entitled to notice had removed his residence without the knowledge of the person charged with the duty of giving notice, the failure to give notice in due time was excused.

In Pier v. Heinrichshoffen, 67 Missouri, 163, it was held that the sudden and unexpected suspension of a bank to which the note had been sent for collection and payment in due course of mail excused the prompt giving of notice.

In Blodgett v. Durgin, 32 Vt., 361, it was held that the holder of a note was excused from giving notice to an endorser where he did not know the residence of the endorsed and could not ascertain it by diligent inquiry.

In Newbold v. Boraef, 155 Pa., 227, it was held that where a letter enclosing a bill was sent for presentment and protest to a notary but not delivered to him by the letter carrier because of his illness, this furnished a sufficient excuse for lack of due diligence in giving notice of protest.

In no one of the authorities cited, or in any other that we have examined, do we find a state of facts precisely like the facts shown by this record. But we think when the principle announced in these authorities is applied to the facts of this case that the excuse relied on for not giving Mrs. Young notice was not sufficient and is not embraced by any of the rules laid down by the books. The failure to give the notice was not due to misfortune or casualty or unavoidable accident, or to any circumstance or condition beyond the control of the bank. It was due entirely to the voluntary act of the bank officers in accepting, in satisfaction of the draft, the check given to the bank by Carr and Young. Mrs. Young was not a party to this transaction. She had no notice or knowledge of it whatever, nor did she have any information of it until July 15th when the bank received notice of the non-payment of the check.

It seems clear that the bank officers were willing to, and did, accept the check in settlement of the draft and that they freely trusted to the integrity and solvency of Carr and Young for its payment without ascertaining, as they could have done, from the bank on which the

check was drawn whether or not it was good. Their conduct in accepting the check and in surrendering the draft after stamping it "paid" manifested that they were willing at the time to look to the check given to them for the payment of the draft, and that they did not at that time intend to hold Mrs. Young liable on it or anticipate that they would be required to look to her for payment.

If the bank had accepted a note from Carr and Young with other endorsers, in place of the draft, and had delivered the draft to Carr and Young, and it developed that the endorsers on the note were insolvent, it could scarcely be maintained that the bank, upon discovering the worthless character of the note it had accepted, could hold Mrs. Young liable; and we see no substantial difference between the supposed case and the one that actually exists.

When Mrs. Young endorsed this paper the law wrote into the contract for her benefit and protection that she should have notice of the dishonor of the paper according to the course of commercial law, and if not, that she should be released from liability. Or as said by Daniel on Negotiable Instruments, volume two, section 970:

"It is regarded as entering as a condition in the contract of the drawer and endorser of a bill, and of the endorser of a note, that he shall only be bound in the event that acceptance or payment is only demanded; and he notified if it is not made. And in default of notice of non-acceptance or non-payment, the party entitled to notice is at once discharged, unless some excuse exists which exonerates the holder."

This being so, it would seem to follow as an indisputable consequence that when the bank voluntarily chose to accept the check and surrender the draft, and not to give notice of the non-payment of the draft at its maturity, Mrs. Young was discharged, and the fact that she may not have been damaged by the delay in giving her notice does not affect the question. Daniel on Negotiable Instruments, volume two, section 1170; Randolph on Commercial Law, volume three, section 1320; Smith v. Long, 40 Mich., 555, 29 Am. Rept., 558; Wymore First National Bank v. Miller, 37 Neb., 500, 40 Am. St. Rep., 499.

It may be admitted that the bank officers believed in good faith that the check would be paid, but this cir-

cumstance does not bring the transaction within the scope of any of the exceptions that will excuse notice. If the holder of paper could absolve himself from the duty of giving notice by showing that he acted in good faith, or by showing that he mistakenly trusted to the solvency of parties whose paper he accepted in place of other paper, it is obvious that the excuse for not giving notice in this class of cases would rest entirely in the judgment and discretion of the party charged with the duty of giving notice. The failure to give notice would be due entirely to circumstances within his control and not to circumstances beyond his control. It would not be due to accident, misfortune or other casualty. To sanction this as an excuse would be a departure from rules laid down by all the authorities and that have been adhered to without substantial change since their adoption in the early history of commercial law. We find no reason for enlarging or extending existing excuses that the experience of many years has pointed out as being sufficient.

For the reasons stated the judgment is reversed, with directions to proceed in conformity with this opinion.