Dwight Gahm and Anna Lee Gahm v. Commissioner.
Gahm v. Commissioner
Docket Nos. 94993, 594-62.
United States Tax Court
T.C. Memo 1964-118; 1964 Tax Ct. Memo LEXIS 214; 23 T.C.M. (CCH) 665; T.C.M. (RIA) 64118; April 30, 1964
*214 The petitioner was able to raise only part of the necessary funds to buy the stock of a certain corporation. Therefore, as part of the stock-purchase agreement, he had the corporation give its note to the former shareholders in part payment for the stock. The corporation also borrowed $18,000 from a bank to provide the necessary cash to close the stock sale. Held: The obligations to both the former stockholders and the bank were those of the corporation, and their discharge was not a dividend to the petitioner. Frnest Woodward II, for the petitioners. Ferd J. Lotz, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The Commissioner determined deficiencies for the petitioners as follows: Docket No.
Year
Deficiency
94993
1955
$3,773.96
1957
3,308.09
1958
3,823.56
594-62
1959
4,112.40
1960
8,612.50
The primary issue is whether payments by Kitchen Kompact, Inc., to its former stockholders pursuant to a stock-purchase agreement were constructive dividends to the petitioners. If a dividend is found then we must determine whether it was taxable in the year the stock-purchase agreement was executed *215 or when the obligations were actually paid. Also, we must then ascertain whether a sale of land and buildings in 1951 should reduce earnings and profits reported by Kitchen Kompact for its fiscal years ended April 30, 1955, and 1956. Findings of Fact Some of the facts have been stipulated and such facts are found accordingly. The petitioners, Dwight and Anna Lee Gahm, are husband and wife living in Louisville, Kentucky. They filed joint income tax returns for the years in question with the district director of internal revenue at Louisville, Kentucky. Anna Gahm is joined solely because of the filing of joint returns, and all further reference will be to Dwight Gahm as the petitioner. Gahm is the president and sole stockholder of Kitchen Kompact, Inc., a Kentucky corporation, with its principal office in Jeffersonville, Indiana. Prior to May 12, 1955, all of the authorized and issued capital stock of Kitchen Kompact, Inc., being 5000 shares of common stock of no par value, was owned by eight individuals. None of these individuals were related by blood or marriage to Gahm. Kitchen Kompact, Inc., was organized in 1928 as Daniel Wagner Realty Company, a Kentucky corporation. *216 It acquired its land and buildings upon organization in exchange for its then authorized capital stock of $200,000 common stock. Kitchen Kompact came into existence in 1937 through an amendment to the articles of incorporation of Daniel Wagner Realty Company recorded on August 19, 1937, which changed its name to Kitchen Kompact, Inc., and amended its authorization of capital stock. On November 1, 1937, Kitchen Kompact canceled its old capital stock standing at $200,000, against which it issued $96,000 of new preferred stock and $32,030.33 of new common stock, leaving a capital surplus of $71,969.67 against which write-offs were made as follows: Land and buildings
$62,120.11
Investment
449.54
Discount on bonds
1,750.00
Undivided profits
7,650.02
$71,969.67
In June 1951 the land and buildings were sold for $100,558.10. Using the written-down value of the property plus additions and less depreciation as the basis, a net loss was shown on Kitchen Kompact's income tax return for that year of $141.63. Had the original book value of $200,000 been used as the basis, there would have been a loss of $62,120.11. No reflection of such loss as would have been shown *217 has been applied to reduce earnings and profits. During the fiscal year ended April 30, 1955, Kitchen Kompact, Inc., capitalized its earned surplus in the amount of $28,000 for the purpose of increasing the stated value of its capital stock from $52,000 to $80,000. Kitchen Kompact was a family concern, and in early 1955 the family decided to liquidate it if a buyer could not be found within 30 days. After serving four years in the army, the petitioner, Gahm, had gone into the diaper service business in Louisville with one other partner. After about eight years, they realized that although the business was good for one it did not have sufficient growth opportunities for two. Consequently, the partner bought Gahm out, and Gahm began to look for a new business. He was referred to Henry Offutt, the President of Kentucky Trust Company and Vice President of First National Bank of Louisville. After investigating several possibilities suggested by Offutt, Gahm learned through a friend of his that Kitchen Kompact was planning to liquidate if a buyer was not found within 30 days. After discussing the matter with Offutt, Gahm spent about two weeks at the plant in order to observe its operations *218 and to see if he would really be interested in it. Gahm was impressed with the ideas and plans of one of the stockholders, which the latter told him he had not been able to get authority to carry out, and decided it would be a good business to acquire. Both parties exhibited interest in the sale but they were pressed for time due to the decision to sell within 30 days or liquidate. Gahm was not able to put up all the money himself and so on April 27, 1955, a proposal was sent to F. W. Wagner as representative for all of the stockholders of Kitchen Kompact which read as follows: April 27, 1955 Mr. Fritz Wagner, Kitchen-Kompact, Inc., 811 South 12th Street, Louisville, Kentucky. Dear Mr. Wagner: We are writing this letter, on behalf of Mr. Dwight Gahm, to you as representative of all the stockholders of Kitchen-Kompact, Inc. All of us have talked this situation over, and you and the other stockholders have discussed the various phases of Mr. Gahm's proposal to buy the stock of Kitchen-Kompact, Inc. We are attempting in this letter to make a definite proposal, which contains all of the necessary features. Fortunately, we believe substantial agreement has been reached on all *219 of the features, and we are hoping that you and the other stockholders may be able to accept this letter as the contract for the purchase, by Mr. Gahm, of all of the capital stock. 1. All of the capital stock is to be delivered, properly endorsed, on or before six (6) p.m. on May 12, 1955. 2. $50,000.00 of the capital stock is to be endorsed to Dwight Gahm, and $35,000.00 to be endorsed to the Kitchen Kompact, Inc. It may be that Mr. Gahm will want to have the corporation purchase an additional $18,000.00 of the stock from him. However that is done, you would receive on that date $50,000.00 in cash, a note from the corporation endorsed by Mr. Gahm payable to the stockholders in the amount of $35,000.00, and all of the stock would be pledged to secure the payment of $35,000.00. * * *
6. Mr. Gahm is willing to accept your condition that if at any time the net worth of Kitchen-Kompact, Inc., as shown by the books of the Company becomes less than twice the amount of the unpaid, deferred indebtedness to the stockholders, the entire stock of Kitchen-Kompact, Inc. shall revert back to the stockholders, and they can take any steps they deem necessary to satisfy the unpaid indebtedness *220 in full. In fixing the net worth for this purpose, the unpaid indebtedness to the stockholders is not to be deducted as a liability. Of course, if the stockholders took over the Company under this numbered paragraph, they would be entitled only to recover the unpaid indebtedness, plus accrued interest and any balance remaining would belong to Mr. Gahm. 7. During the time the indebtedness is in existence, a duly appointed representative of the present stockholders may receive, each month, an operating statement and profit and loss statement of the Company, and that representative may examine the books upon request, at any reasonable time. Since time is essential in this matter, we are asking Mr. Gahm to present this letter to you personally, and request that you accept the offer by not later than April 29, 1955. Upon acceptance of the offer and the terms of this letter, Mr. Gahm will deliver to you, on account, his check in the amount of $5,000.00, as a down payment to be applied on the purchase price, and as requested by you, to be forfeited if the sale is not closed on May 12, 1955, for any reason other than the present stockholders' failure to perform their duties under this *221 offer. Yours very truly, WOODWARD, HOBSON & FULTON By /s/ Fielden Woodward Fielden Woodward. FW:emc This letter contained an endorsement of acceptance by all the stockholders dated April 29, 1955. Gahm was only able to scrape together $32,000 from the sale of his interest in the diaper business, some small savings, and the refinancing of the mortgage on his home. The First National Bank decided that Kitchen Kompact had assets which could be liquidated in sufficient amount to pay off a debt of $18,000. Based on that assessment, it agreed to lend Kitchen Kompact that much on its own borrowing power. They would not have done this, however, unless Gahm were to become the sole stockholder of Kitchen Kompact. With this commitment, the board of directors of Kitchen Kompact adopted a resolution on May 11, 1955, which read in part as follows: RESOLVED: That Kitchen Kompact, Inc. be authorized to borrow $18,000.00 from the First National Bank of Louisville, Kentucky, in order to purchase capital stock of the Company from the stockholders of the Company of record as of May 10, 1955; the price of said stock to be $17.00 per share; and that the President and other officers be authorized *222 to execute the notes and other necessary papers, if any, to accomplish the said loan, which said loan is to be secured by the pledging of life insurance on the life of Dwight Gahm, President of the Company, in the face amount of $ and which said note is to be endorsed by Dwight Gahm and Owsley Haskins. The said motion was carried by unanimous vote of all the Directors present and constituting a quorum. It was moved by Mr. Duerr, and seconded by Mr. Haskins, that the proper officers of the Company be authorized to execute a note in the sum of $35,000.00, and an Escrow Agreement, with The Kentucky Trust Company, as Escrow Agent, in order that the Company should purchase $35,000.00 of the capital stock of the Company at $17.00 per share, from the stockholders of record as of May 10, 1955. Said motion was carried by unanimous vote of the Directors present. A copy of said note and Escrow Agreement are filed herewith and made a part hereof. The $18,000 borrowed from the First National Bank was evidenced by two notes dated May 11, 1955. One was for three months in the amount of $11,500 plus $129.38 prepaid interest, and the other was a demand note for $6,500 which was secured by Gahm's *223 life insurance policy. Two notes were made instead of one since one was secured by collateral although both bore the same rate of interest. In the column headed "Maker, Endorser or Collateral" on the ledger sheet of First National Bank, listing notes of Kitchen Kompact, the names of Dwight Gahm and Owsley Haskins appear beside the entry for the $11,500 note, and beside the entry for the $6,500 note appears the notation of Dwight Gahm, Owsley Haskins, and Collateral. Haskins was not and never had been a stockholder in Kitchen Kompact, but since he was a mutual friend of both Gahm and Offutt he consented to sign the notes. It was the understanding of Gahm's counsel that Gahm and Haskins signed the note as endorsers. The note was a standard form with blank lines on the bottom right-hand corner on which they both signed without any designation of their liability. The $35,000 note was signed by Gahm as president of Kitchen Kompact and then his signature appears again in the lower right-hand corner without any particular designation. In signing the accompanying escrow agreement, however, he signed first in his individual capacity, then he signed for Kitchen Kompact as president followed *224 by the signatures of the eight former stockholders of Kitchen Kompact. Gahm regarded all three obligations as those of Kitchen Kompact. The practice of having Gahm sign the notes of the corporation continued for several years until he signed a general unlimited guarantee of all the obligations of Kitchen Kompact. The reason the bank required Gahm to sign the notes was that, although the business was successful, increased growth continued to make it marginal. The note for $35,000 states that, "On or before May 12, 1961, we do jointly and severally promise to pay the sum of Thirty-five Thousand Dollars ($35,000.00)" to the selling stockholders. The escrow agreement which accompanied the note reads as follows: ESCROW AGREEMENT THIS ESCROW AGREEMENT made and entered into this May 12, 1955, by and between DWIGHT GAHM and KITCHEN KOMPACT, INC., hereinafter referred to as "Purchasers"; and JOHN M. POUND, MARGARET F. POUND, MARGARET C. MOSES, GEORGE WAGNER, SOPHIA WAGNER, HELEN WAGNER, F. W. WAGNER, JR., L. M. SANDERS, all hereinafter referred to as "Stockholders"; and THE KENTUCKY TRUST COMPANY, hereinafter referred to as "Escrow Agent; WITNESSETH: 1. Gahm and Kitchen Kompact, *225 Inc. have this date purchased from the stockholders their entire holdings of the capital stock of Kitchen Kompact, Inc. In part payment thereof, Kitchen Kompact, Inc. and Gahm have executed their joint and several promissory note, a copy of which is attached hereto and made a part hereof as fully as if copied herein. By the terms of said note purchasers may make the payments required thereunder to F. W. Wagner, Jr., as agent of all the stockholders. 2. As security for this note, the makers do now deposit with the Escrow Agent the stock certificates representing the entire capital stock of Kitehen Kompact, Inc., being 5000 shares: * * *
4. Purchasers agree to the further conditions: A. An audit of the books of Kitchen Kompact, Inc., shall be made each year by a Certified Public Accountant. B. If at any time Escrow Agent is notified by stockholders that the net worth of Kitchen Kompact, Inc., as shown on its books is less than twice the amount of the unpaid indebtedness on said note (not considering the balance on said note, however, as a liability for this purpose), or the ration of current assets to fixed assets becomes less than 4 to 1 the Escrow Agent shall deliver the *226 certificates to the stockholders (or their representative) who may take any steps they deem necessary to satisfy the remaining debt, and the excess, if any, shall be paid to Gahm. * * *
WITNESS our signatures: /s/ Dwight Gahm, Dwight Gahm KITCHEN COMPACT, INC. By /s/ Dwight Gahm, Pres., /s/ F. W. Wagner, Jr., /s/ Margaret C. Moses., /s/ Helen E. Wagner, /s/ George H. Wagner, /s/ John M. Pound, /s/ Margaret F. Pound, /s/ Sophia Wagner, /s/ L. M. Sanders THE KENTUCKY TRUST COMPANY
By /s/ Henry M. Offutt Pres. The accountants for Kitchen Kompact were advised by Gahm's attorneys in a letter dated May 31, 1956, that the $35,000 note was the obligation of the corporation only and that Gahm signed the note purely as an endorser. The letter said that the creditors wanted his name to appear as a maker instead of a guarantor for technical legal reasons, but that he was in fact a guarantor only. In its income tax returns for the fiscal year April 30, 1956 to 1957 and for each subsequent year until the notes were paid Kitchen Kompact indicated that the notes were the liabilities of the corporation. It also listed treasury stock in the amount of $53,000. On May 18, 1955, the *227 stockholders received from Dwight Gahm in cash the sum of $32,000 and from Kitchen Kompact, Inc., the sum of $18,000, together with the note for $35,000. Payments were made by Kitchen Kompact, Inc., on the principal of the three notes as follows: Aug. 9, 1955
$11,500 plus $129.38 interest on
the note for $11,500
Apr., 1957
$6,500 on the note for $6,500 and
$3,500 on the note for $35,000
May, 1958
$7,875 on the note for $35,000
May 12, 1959
$7,875 on the note for $35,000
Jan. 11, 1960
$15,750 on the note for $35,000 The above payment discharged all of these notes in full. Kitchen Kompact paid dividends of $5,000, $10,000, and $10,000 for the fiscal years ended April 30, 1952, 1953, and 1954, respectively, but no dividends were declared or paid for the fiscal years ended April 30, 1955, through 1960. During the years in question, Gahm received salaries from Kitchen Kompact as follows: Year
Amount of
Salary
1955
$10,400.00
1957
21,200.00
1958
40,000.00
1959
46,666.64
1960
46,000.16
Findings of Ultimate Facts The sale of stock by all of the former stockholders was to Kitchen Kompact, Inc., and petitioner, and not to *228 petitioner alone. Petitioner did not obligate himself to purchase the shares that were redeemed by the corporation and no part of the $53,000 payment by the corporation was paid to or received by petitioner. The entire payment was in discharge of a corporate debt and not in payment of an obligation of the petitioner. Opinion It is well established that when a corporation discharges an obligation of one of its stockholders the payment of this debt may be treated as a dividend to the stockholder. Irving Sachs, 32 T.C. 815 (1959), affirmed 277 F. 2d 879 (C.A. 8, 1960); Ferro v. Commissioner, 242 F. 2d 838 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court; F. G. Lamb, 14 B.T.A. 814 (1928). This same rationale has been applied to the redemption by a corporation of stock which a shareholder was under obligation to purchase from a third party. Wall v. United States, 164 F. 2d 462 (C.A. 4, 1947). However, in the absence of a specific obligation to purchase the stock the courts have refused to give dividend treatment to such a redemption. Holsey v. Commissioner, 258 F. 2d 865 (C.A. 3, 1958), reversing *229 and remanding 28 T.C. 962 (1957); Milton F. Priester, 38 T.C. 316 (1962). Here, the agreement and understanding of the parties was that Gahm and Kitchen Kompact would purchase all of the outstanding shares owned by the Wagner family group, 5,000 shares for $85,000, $50,000 to be paid at the time of sale and $35,000 to be financed by the sellers. In the letter proposal from Gahm's lawyer to Wagner it was initially suggested that Gahm would buy $50,000 worth of stock and that the corporation would buy $35,000 worth. However, as we interpret the proposal letter, there was no binding obligation that Gahm buy any certain number of shares or that the corporation would not acquire more than mentioned. The essence of the proposal was that the Wagner family would be paid cash of $50,000 and be given a note for $35,000 from the corporation, endorsed by Gahm, secured by a pledge of all of the corporate stock. In a very short time it developed that Gahm could not raise $50,000, but instead could only muster total cash of $32,000. The bank, however, was willing to lend the corporation the additional $18,000 and so it acquired $53,000 worth of stock, as treasury shares *230 and Gahm only bought $32,000 worth on his own account. As we view the whole record, Gahm was not obligated at any time to purchase or pay for more stock than he actually bought and paid for when the transaction was closed about two weeks after the initial proposal letter was written. Both Gahm and the corporation signed the notes and escrow agreement as purchasers, and the respondent argues that Kitchen Kompact discharged an obligation owed by Gahm when it gave or paid the three notes. However, Gahm was only an accommodation comaker on the notes. Under Kentucky law the accommodated party is the one who receives value for the note and not the one who signs it simply for the purpose of lending his name or credit. Kentucky Revised Statutes, 356.029; First National Bank v. Bickel, 143 Ky. 754, 137 S.W. 790 (1911). Cf. Mechanics' & Farmers Savings Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071 (1910). Kitchen Kompact received the $18,000 from the bank on the initial two notes and, eventually when all notes were paid, the $53,000 worth of its own stock which was listed on its books as treasury stock. The corporation was therefore the accommodated party and Gahm *231 was merely an accommodation comaker. The only thing that Gahm ultimately received as a result of the corporate actions was an increase in his proportionate ownership of a corporation whose assets were reduced by $53,000. Such an increase in proportionate interest is not sufficient to support dividend treatment. Holsey v. Commissioner, supra; Milton F. Priester, supra. After examining all the particular facts and circumstances of this case we have found that there was a sale of $53,000 worth of stock to the corporation and that all three notes in question were obligations of Kitchen Kompact. We have also found that petitioner was not obligated to purchase any of the shares redeemed by the corporation. Accordingly, no dividend, either constructive or actual, was distributed to Gahm. Since we have found that the payments by Kitchen Kompact were not dividends to Gahm it becomes unnecessary to decide the other issues raised. Decisions will be entered under Rule 50.